UNITED STATES of America,
Plaintiff-Appellee,

v.

BOB LAWRENCE REALTY, INC., et al.,
Defendants-Appellants.

No. 72-1655.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1973.

Rehearing Denied March 16, 1973.

Glenville Haldi, Atlanta, Ga., for defendants-appellants.

John W. Stokes, Jr., U. S. Atty., David L. Norman, Asst. Atty. Gen., Martin Barenblat, John N. Mitchell, Atty. Gen., Carl W. Gabel, Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Charles L. Weltner, Atlanta, Ga., for Stanley.

Earle B. May, Jr., Atlanta, Ga., for D. L. Stokes.

Wesley R. Asinof, Atlanta, Ga., for Reeves & Reeves.

Noah J. Stone, Julian E. Gortatowsky, Atlanta, Ga., for Heimerich.

Before GOLDBERG, AINSWORTH and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

This case presents the first appellate challenge to the constitutionality of 42 U.S.C. § 3604(e), the "anti-blockbusting" provision of the Fair Housing Act of 1968, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq.

We find that § 3604(e) falls within the constitutional authority of Congress to enact legislation to enforce the Thirteenth Amendment and that § 3604(e) does not violate the First Amendment. The District Court enjoined appellant from violating § 3604(e). We affirm.

This action was brought by the Department of Justice pursuant to Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq., alleging that appellant, Bobby L. Lawrence, President of Bob Lawrence Realty, Inc., and four other Atlanta, Georgia real estate brokers had undertaken "blockbusting" activities prohibited by 42 U.S.C. § 3604(e).[1] The government's complaint seeking injunctive relief arose out of all the defendants' solicitation activities in racially transitional areas in southeast Atlanta. It alleged (1) that the defendants participated, individually and collectively, in a pattern or practice of resistance to the enjoyment of rights granted by the Act, and (2) that a group of persons had been denied rights secured by the Act, raising an issue of general public importance. See, 42 U.S.C. § 3613.[2]

The District Court denied several motions filed by appellant and various other defendants, including motions to dismiss, for a more definite statement, for a jury trial, and for a severance. United States v. Bob Lawrence Realty, Inc., N.D.Ga.1970, 313 F.Supp. 870 (*Lawrence I*).[3] Following the denial of these motions, appellant and two other defendants filed separate motions for summary judgment, which the District Court denied. The District Court held, however, that the government's affidavits and documentary evidence were insufficient to make out an "individual pattern or practice" of violations by appellant, and

1. 42 U.S.C. 3604(e) (Section 804(e), Civil Rights Act of 1968)

  SEC. 804. As made applicable by section 803 and except as exempted by sections 803(b) and 807, it shall be unlawful—

  *   *   *   *   *

  (e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin.

2. *See*, Part II, *infra.*

3. Appellant then filed a counterclaim and cross-action against the government seeking attorney's fees and damages for abuse of prosecution and undue litigation.

granted summary judgment as to that issue. The District Court also held that triable issues of fact existed as to whether appellant had participated in a "group pattern or practice" of unlawful conduct and as to whether there had been a denial of rights secured by the Act to a group of persons raising an issue of general public importance. United States v. Bob Lawrence Realty, Inc., N.D.Ga.1971, 327 F.Supp. 487 (*Lawrence II*).

Shortly before the trial, consent decrees were entered against two of the five original defendants, and the action against a third was dismissed. The case as it pertained to appellant and the other remaining defendant then proceeded to trial. The District Court ·made the following findings of fact, which are more fully set out in its opinion. United States v. Mitchell, N.D.Ga.1971, 335 F.Supp. 1004.

> Appellant is a real estate broker licensed by the State of Georgia to engage in the listing and selling of real estate,[4] and employs twenty seven sales personnel who act as his agents.[5] During the period with which this action is concerned, appellant did business in the Candler Road—McAfee area in southeast Atlanta. Appellant

was aware that this area has been a racially transitional area since 1968, approximately two years before the action was filed. Prior to 1968 the racial composition of the area was all white, · but as blacks began moving into the area in 1968, whites began moving out. Two of appellant's sales personnel made representations prohibited by 42 U.S.C. § 3604(e) to four different individuals. Although these representations did not constitute an "individual pattern or practice" of violating the Act, they were made as part of a "group pattern or practice" of violating the Act by all agents in the area.

The District Court did not consider the evidence sufficient to raise an issue of general public importance as required by 42 U.S.C. § 3613 and made no finding as to whether a group of persons had been denied rights under the Act. The District Court also made no finding concerning appellant's counterclaim and cross-action to recover attorney's fees and for damages.

On December 27, 1971, the District Court issued its opinion and order enjoining appellant from further unlawful conduct, from which ruling only appellant appeals.[6]

---

4. A real estate broker acts as a middle man in the housing market. Willing sellers list their homes with an individual real estate broker and the real estate broker, through agents, then shows listed homes to potential buyers, presenting the potential buyers' offers to the listing seller. The real estate broker earns a commission from the listing seller only when sales are consummated.

5. A real estate salesperson's earnings are derived from the commission earned by the real estate broker and increase in direct proportion to the number of houses sold.

6. The District Court issued the following injunction: "It is therefore considered, ordered and adjudged:

"(1) That the defendants and their agents, employees, successors, and all those acting in concert or participation with them, be and they are hereby permanently enjoined from inducing or

attempting to induce any person to sell or rent any dwelling by any explicit or implicit representations regarding the entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin;

"(2) a. That the defendants shall instruct each salesman, agent, and employee of the provisions of the Fair Housing Act and of this decree, his obligations and duties thereunder, and that failure to comply with these obligations and duties may result in dismissal or other appropriate action. This instruction shall be given within ten (10) days of the entry of this decree, and thereafter within ten (10) days of hiring of any new salesmen, employees, and agents. The defendants shall secure from each salesman, employee, and agent a signed statement certifying that he understands his obligations and duties not to discriminate against any person on account of race,

On appeal to this Court, appellant launches a scatter gun attack on the District Court's order. As we perceive appellant's brief, he presents four arguments: (1) 42 U.S.C. § 3604(e) is unconstitutional; (2) the Attorney General lacks standing to maintain this action; (3) the injunctive relief is improper; and (4) appellant is entitled to recover reasonable attorney's fees.

## I. CONSTITUTIONALITY OF SECTION 3604(e)

Blockbusting has been described as a process through which individuals stimulate and prey

" . . . on racial bigotry and fear by initiating and encouraging rumors that negroes . . . [are] about to move into a given area, that all non-negroes . . . [will] leave, and that the market values of properties . . . [will] descend to 'panic prices' with residence in the area becoming undesirable and unsafe for non-negroes."

Contract Buyers League v. F & F Investment, N.D.Ill.1969, 300 F.Supp. 210, 214. *See generally, Note,* Blockbusting, 59 Geo.L.J. 170 (1970); Note, Blockbusting: A Novel Statutory Approach to an Increasingly Serious Problem, 7 Colum. J. of Law & Soc. Sci. 538 (1971). Blockbusting practices " . . . constitute a fundamental element in the perpetuation of segregated neighborhoods, racial ghettos and the concomitant evils which have been universally recognized to emanate therefrom." Brown v. State Realty Co., N.D.Ga.1969, 304 F.Supp. 1236, 1240. In order to attack this pernicious example of a\capitalistic ethic gone astray, Congress enacted 42 U.S.C. § 3604(e), the anti-blockbusting provision of the Fair Housing Act of 1968.[7] Congress was aware that as laudable and necessary as the profit motive might be for our socio-economic system, it must on occasion yield to more humane and compassionate mores which are inherent in the system itself, and necessary for its survival.

color, religion, or national origin in relation to the sale or rental of dwellings, or the employment of personnel;

"b. That the defendants shall conduct all solicitation effort in such a manner so that the types and amount of solicitation activity shall be essentially similar in all areas in which the defendants conduct business and the defendants shall not conduct a greater amount or a different type of solicitation in areas which are inhabited by Negroes, or partially inhabited by Negroes, than in areas which are not so inhabited;

"c. That the defendants shall make a notation on their records to indicate the race of each person who purchases a house, or sells a house, in the course of their business;

"d. That the defendants in all of their real estate transactions, shall provide their services without distinctions based on race or color;

"(3) That in case of a dispute as to any future charge by plaintiff that this order has been violated by defendants, either individually or jointly, the parties, in an attempt to resolve such dispute, shall attempt to conciliate the matter which is the subject of the allegation within 30 days after the other party has been notified of the alleged

violation, and a party shall not apply to this court for additional relief or other appropriate relief within such 30-day period, provided that nothing shall prevent a party from applying to the court in the event that the alleged violation is an explicit violation of the order, as found by the court, and the utilization of the procedure described above would result in irreparable injury to the victim of the alleged discrimination; and

"(4) That this order shall be effective for a period of two years from this date, provided, however, that for good cause shown, the parties may move this court for an extension or modification of the order, as appropriate, upon giving the other party 30 days notice prior to moving for such modification or extension.

"Representatives of the plaintiff shall be permitted to inspect and copy all pertinent records of the defendants at any and all reasonable times, provided, however, that the plaintiff shall endeavor to minimize any inconvenience to the defendants from the inspection of such records."

United States v. Mitchell, *supra,* 335 F. Supp. at 1007–1008.

7. *See* note 1, *supra.*

Appellant argues that § 3604(e) is unconstitutional on two grounds: (A) Congress does not have authority to enact the statute. (B) The statute violates the First Amendment.

### A. Congressional authority

In evaluating appellant's first contention that Congress has no authority to enact § 3604(e), we are given much guidance by the decision of the United States Supreme Court in Jones v. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189. In upholding the constitutionality of 42 U.S.C. § 1982, the Court stated:

"Our starting point is the Thirteenth Amendment, for it was pursuant to that constitutional provision that Congress originally enacted what is now § 1982. The Amendment consists of two parts. Section 1 states:

'Neither slavery nor involuntary servitude, except as a punishment for crime whereby the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.' Section 2 provides:

'Congress shall have power to enforce this article by appropriate legislation.'

"As its text reveals, the Thirteenth Amendment 'is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States.' It has never been doubted, therefore, 'that the power vested in Congress to enforce the article by appropriate legislation,' ibid., includes the power to enact laws 'direct and primary, operating upon the acts of individuals, whether sanctioned by state legislation or not.' "

"Thus, the fact that § 1982 operates upon the unofficial acts of private individuals, whether or not sanctioned by state law, presents no constitutional problem. If Congress has power under the Thirteenth Amendment to eradicate conditions that prevent Negroes from buying and renting property because of their race or color, then no federal statute calculated to achieve that objective can be thought to exceed the constitutional power of Congress simply because it reaches beyond state action to regulate the conduct of private individuals. The constitutional question in this case, therefore, comes to this: Does the authority of Congress to enforce the Thirteenth Amendment 'by appropriate legislation' include the power to eliminate all racial barriers to the acquisition of real and personal property? We think the answer to that question is plainly yes."

" 'By its own unaided force and effect,' the Thirteenth Amendment 'abolished slavery, and established universal freedom'. Whether or not the Amendment *itself* did any more than that—a question not involved in this case—it is at least clear that the Enabling Clause of that Amendment empowered Congress to do much more. For that clause clothed 'Congress with power to pass *all laws necessary and proper for abolishing all badges and incidents of slavery in the United States*'. (Emphasis added.)"

392 U.S. at 437–439, 88 S.Ct. at 2202–2203, 20 L.Ed.2d at 1206–1207. (Citations and footnotes omitted.)

■ We think that the mandate of *Jones* is clear. This Court will give great deference, as indeed it must, to the congressional determination that § 3604(e) will effectuate the purpose of the Thirteenth Amendment by aiding in the elimination of the "badges and incidents of slavery in the United States." Jones v. Mayer Co., *supra*, 392 U.S. at 439, 88 S.Ct. at 2203, 20 L.Ed.2d at 1207; Brown v. State Realty, *supra*, 304 F.Supp. at 1240.[8] Appellants have

---

8. The Supreme Court has consistently recognized congressional power to legislate in furtherance of the elimination of racial discrimination. *See*, Griffin v.

failed to present any argument that impugns the reasonableness of the congressional determination. Indeed, no such argument can be made in light of the role that blockbusting plays in creating and in perpetuating segregated housing patterns and thus in preventing " . . . a dollar in the hands of a Negro . . . [from purchasing] the same thing as a dollar in the hands of a white man." Jones v. Mayer Co., *supra*, 392 U.S. at 443, 88 S.Ct. at 2205, 20 L. Ed.2d at 1209; *see also*, Note, Discriminatory Housing Markets, Racial Unconscionability, and Section 1988: The 'Contract Buyers League' Case, 80 Yale L.J. 516 (1971). We find that the Thirteenth Amendment empowers Congress to enact § 3604(e).[9]

### B. Blockbusting and the First Amendment

Appellant contends that § 3604(e) constitutes an unconstitutional prior restraint by Congress on the right to free speech. In rejecting this contention, the court below stated:

"It is evident that the statute did not make mere speech unlawful. What it does make unlawful is economic exploitation of racial bias and panic selling. We conclude that the statute is one regulating conduct, and that any inhibiting effect it may have upon speech is justified by the Government's interest in protecting its citizens from discriminatory housing practices and is not violative of the First Amendment."

*Lawrence I, supra*, 313 F.Supp. at 872.

We agree with the District Court. As Judge Soboleff said in United States v. Hunter, 4 Cir. 1972, 459 F. 2d 205, cert. denied, 1972, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189, a case that held that 42 U.S.C. § 3604(c) does not violate the First Amendment:

"It is now well settled that, while 'freedom of communicating information and disseminating opinion' enjoys the fullest protection of the First Amendment, 'the Constitution imposes no such restraint on government as respects purely commercial advertising.' Valentine v. Chrestensen, 316 U.S. 52, 54, 62 S.Ct. 920, 921, 86 L.Ed. 1262 (1942). See Breard v. City of Alexandria, 341 U.S. 622, 641–645, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); New York State Broadcasters Ass'n Inc. v. United States, 414 F.2d 990, 998–999 (2nd Cir. 1969), cert. denied, 396 U.S. 1061, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); Banzhaf v. F C C, 132 U.S. App.D.C. 14, 405 F.2d 1082, 1099–1103 (1968), cert. denied, sub nom. Tobacco Institute, Inc. v. F C C, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969); Capital Broadcasting Co. v. Mitchell, 333 F.Supp. 582 (D.D.C.1971), (three-judge court), aff'd sub nom. Capital Broadcasting Co. v. Kleindienst, Acting Attorney General, 405 U.S. 1000, 92 S.Ct. 1289, 31 L.Ed.2d 472 (1972)."

United States v. Hunter, *supra*, 459 F.2d at 211–212.

Section 3604(e) regulates commercial activity, not speech. The statute is aimed at the commercial activities of those who would profiteer off the ills of society, conduct that the Thirteenth Amendment empowers Congress to regulate. We think the court in United States v. Mintzes, D.Md.1969, 304 F.

Breckenridge, 1971, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (power under Thirteenth Amendment); Katzenbach v. McClung, 1964, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (power under interstate commerce); Katzenbach v. Morgan, 1966, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (power under Fourteenth Amendment); South Carolina v. Katzenbach, 1966, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed. 2d 769 (power under Fifteenth Amendment); *cf.* Palmer v. Thompson, 1971, 403 U.S. 217, 227, 91 S.Ct. 1940, 29 L.Ed.2d 438, 446 (power under Thirteenth Amendment).

9. Having found constitutional authority for Congress to enact § 3604(e) in the Thirteenth Amendment, we pretermit any discussion of Congress's authority under either the Commerce Clause or the Fourteenth Amendment.

Supp. 1305, correctly analyzed the statute when it said:

> "The words 'for profit,' as used in section 3604(e) include the purchase of property by prohibited means with the hope of selling it for a larger price, but the words are not limited to such a transaction. They were evidently included in § 3604(e) to distinguish and eliminate from the operation of that subsection statements made in social, political or other contexts, as distinguished from a commercial context, where the person making the representations hopes to obtain some financial gain as a result of the representations. See Halsted v. S. E. C., 86 U.S.App.D.C. 352, 182 F. 2d 660, 668 (1950)."

304 F.Supp. at 1312.

Appellant argues that an individual cannot properly be enjoined from making racial representations to obtain the business of a potential seller when the racial statement presents the truth. But it is clear that just as "[t]he state can prohibit the use of the street for the distribution of purely commercial leaflets, even though such leaflets may have 'a civic appeal, or a moral platitude' appended," Jamison v. Texas, 1943, 318 U.S. 413, 417, 63 S.Ct. 669, 672, 87 L.Ed. 869, 873, the federal government may in some circumstances prohibit *purely commercial* speech made in connection with conduct which Congress can permissibly regulate or prohibit. Any informational value in a statement violative of § 3604(e) is clearly outweighed by the government's overriding interest in preventing blockbusting. *See,* United States v. O'Brien, 1968, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672.

The only "speech" proscribed by § 3604(e) is commercial speech made to gain profit from racial representations. If § 3604(e) were to reach a non-commercial statement, a political statement, or a purely informational statement, it would naturally be subject to First Amendment attack. *See,* United States v. Hunter, *supra,* 459 F.2d at 212 n. 9. However, it doesn't, and so § 3604(e) does not violate the First Amendment.[10]

## II. STANDING OF THE ATTORNEY GENERAL

42 U.S.C. § 3613 provides:

> "Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, he may bring a civil action in any appropriate United States district court by filing with it a complaint setting forth the facts and requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for such pattern or practice or denial of rights, as he deems necessary to insure the full enjoyment of the rights granted by this subchapter."

The Attorney General thus has standing to sue whenever (1) there is an "individual" or a "group" pattern or practice

10. The cases relied on by appellant, such as New York Times v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and New York Times Co. v. United States, 1971, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822, reaffirm the constitutional principle that speech made in a political or informational context deserves the highest degree of protection from governmental restraint. Those cases do not, however, stand for the principle that the government cannot regulate speech made incidental to a purely commercial activity. The motivation for words employed in blockbusting is the profit to be made by the speaker or writer. If the words used to induce selling, with concomitant profits for the broker, had any other motivation, our judicial conscience would be twinged by our devotion to the First Amendment. *See* United States v. Hunter, *supra,* 459 F.2d at 211 n. 6.

violative of the Fair Housing Act[11] or (2) whenever a group of persons has been denied rights granted by the Act and that denial raises an issue of general public importance.

The District Court found that appellant had not participated in an "individual pattern or practice," but that the evidence established:

" . . . by overwhelming preponderance . . . a 'group' pattern or practice by all agents in the area, both defendants and non-defendants, and that some agent or agents of each of the defendants did knowingly participate in such pattern or practice, at least in some measure or to some degree."

United States v. Mitchell, *supra*, 335 F. Supp. at 1006 (footnotes omitted). The District Court found that appellant participated in the "group pattern or practice" when two of his agents made forbidden representations to four individuals. *Id.* The District Court made no finding as to whether or not a group of persons had been denied rights granted by the Fair Housing Act.[12]

As we interpret appellant's brief, he argues that the Attorney General did not have standing to sue him once the District Court found that appellant had not participated in an "individual pattern or practice." Appellant bases this argument on two grounds. He urges: (1) that the Attorney General must prove that appellant participated in an "individual pattern or practice" to have standing to obtain relief for a "group pattern or practice"; and (2) that the Attorney General must allege and prove a conspiracy or concerted action in order to have standing to obtain injunctive relief against a "group pattern or practice" of violating the Act.

■ The clear meaning of § 3613 directly refutes appellant's first conten-tion. Section 3613 authorizes the Attorney General to bring an action in District Court whenever he "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter. . . ." Unless we are to construe the phrase "group of persons" as totally superfluous, there is no need for each member of the "group of persons" to be engaged in an "individual pattern or practice" of violating the Act before the Attorney General has standing to sue. The statute was thus intended to reach the illegal activities of a group of persons even if the individual members of the group of persons were not engaged in an "individual pattern or practice." We decline to contradict the clear inference of § 3604(e) by adopting appellant's argument.

■ Appellant's second contention that the "group of persons . . . engaged in a pattern or practice of resistance to the full enjoyment of [§ 3604(e)] . . . " must have engaged in a conspiracy or concerted action before the Attorney General has standing to sue is also erroneous. In considering the meaning of the "pattern or practice" requirement, this Court has said:

"We turn now to the question whether the 1969 [violations] . . . were isolated incidents or part of a pattern or practice of discrimination under the Fair Housing Act of 1968. The Act does not define 'pattern or practice', and the phrase is not explained by the legislative history. Relevant, however, are judicial and legislative interpretations of the phrase under earlier civil rights acts, such as the Civil Rights Act of 1960, 42 U.S.C.A. § 1971(e). The words 'pattern or practice' were not intended to be esoteric words of art. There is

---

11. There is no simple definition of a "pattern or practice," *see,* United States v. West Peachtree Tenth Corp., 5 Cir. 1971, 437 F.2d 221, 227, however, it is clear that an individual can violate the act by isolated illegal representations not rising to the level of an "individual pattern or practice." *See* 42 U.S.C. § 3604(e).

12. *See,* note 14, *infra.*

nothing magic in their meaning. United States v. Mayton, 5 Cir. 1964, 335 F.2d 153, 158–159. To be sure, they were intended to encompass more than an 'isolated or accidental or peculiar event.' *See* Hearings on H.R. 10327 Before the House Committee on the Judiciary, 86th Cong., 2d Sess. 13; United States v. Mayton, *supra,* at 158–159."

"The number of [violations] . . . is not determinative. United States v. Ramsey, 5 Cir. 1964, 331 F.2d 824, 837 (concurring opinion). Nevertheless, we do note that in a case brought under the Act involving 'blockbusting,' three § 3604 violations were sufficient to establish a pattern or practice. United States v. Mintzes, D.Md. 1969, 304 F.Supp. 1305, 1314–1315. In any event, no mathematical formula is workable, nor was any intended. Each case must turn on its own facts."

United States v. West Peachtree Tenth Corp., 5 Cir. 1971, 437 F.2d 221, 227. Guided by this standard, we must now interpret the terms "pattern or practice" in the context of a group of persons alleged to be violating § 3604(e).

Blockbusting by its very nature does not require concerted action or a conspiracy to wreak its pernicious damage. There is, for example, no need for XYZ Realty to conspire with ABC Homes to set off a pattern or practice of activities violating the act. The sociological phenomenon of a transitional area[13] is enough to attract blockbusters intent upon culling all the profits that can be derived from the area. The very essence of the phenomenon is that a large number of competitors individually besiege an area seeking to gain a share of the market.

"If there be any doubt as to the meaning of the statute it is our function to construe the language of the statute so as to give effect to the intent of Congress . . . ." Saxon v. Georgia Ass'n of Ind. Ins. Agents, Inc., 5 Cir. 1968, 399 F.2d 1010, 1015. To interpret § 3613 as requiring proof of a conspiracy before the Attorney General has standing to seek to enjoin a group pattern or practice of blockbusting would be to seriously restrict the congressional intent to stop blockbusting practices and to unjustifiably restrict the power which Congress gave to the Attorney General to proceed against group patterns or practices. We decline to do so. Even though there may be no "individual pattern or practice" of blockbusting, a "group pattern or practice" of blockbusting is established when a number of individuals utilize methods which violate § 3604(e).

The District Court finding that a group of persons was engaged in a pattern or practice of violating § 3604(e) demonstrates the efficacy of the Attor-

---

13. The District Court found as follows:

"The evidence at the trial disclosed many illuminating things about what happens in a residential neighborhood when it becomes racially transitional. For example, if these cases are typical—and the court believes they are—the following consequences can be predicted as inevitable, and beyond dispute: First, a sense of panic and urgency immediately grips the neighborhood and rumors circulate and recirculate about the extent of the intrusion (real or fancied), the effect on property values and the quality of education. Second, there are sales and rumors of sales, some true, some false. Third, the frenzied listing and sale of houses attracts real estate agents like flies to a leaking jug of honey. Fourth, even those owners who do not sell are sorely tempted as their neighbors move away, and hence those who remain are peculiarly vulnerable. Fifth, the names of successful agents are exchanged and recommended between homeowners and frequently the agents are called by the owners themselves, if not to make a listing then at least to get an up-to-date appraisal. Constant solicitation of listings goes on by all agents either by house-to-house calls and/or by mail and/or by telephone, to the point where owners and residents are driven almost to distraction."

United States v. Mitchell, *supra,* 335 F. Supp. at 1005–1006.

ney General's decision that he had "reasonable cause to believe that any person or group of persons [was] . . . engaged in a pattern or practice of resistance to [§ 3604(e)] . . ." *See,* United States v. Ironworkers Local No. 1, 7 Cir. 1971, 438 F.2d 679, 681–682, cert. denied, 1971, 404 U.S. 830, 92 S.Ct. 75, 30 L.Ed.2d 60, and of the District Court's finding that the Attorney General has standing to sue.[14]

## III. PROPRIETY OF INJUNCTIVE RELIEF

Appellant argues in his brief that:

"The evidence conclusively shows that Bob Lawrence had done everything humanly possible to eliminate any possible violation of *any* act, particularly the 1968 Civil Rights Act. On *one* isolated afternoon in April of 1969 three calls were made on homeowners which did not result in any illegal representation being made. Before that time—no complaint. After that time—no complaint. Without the imminent danger of repetition, there is no equity jurisdiction."

He asks this Court to make the following findings:

"A finding that injunctive relief is inappropriate to Bob Lawrence.

A finding that Bob Lawrence has committed no prohibited act.

A finding that Bob Lawrence has not engaged in any 'pattern or practice' designed to deny to any person his civil rights."

Appellant's argument that injunctive relief is improper in this action is apparently based on his belief that since he is totally innocent of any violation of the Act, he is being enjoined solely on the basis of activities of other real estate agents in the area, and furthermore, that equity should not intervene because there is no danger that he will violate the Act in the future. The District Court, however, explicitly found: (1) that appellant had violated § 3604(e); (2) that there was a group pattern of violating the Act by all the agents in the area; and (3) that appellant participated in that pattern or prac-

14. In addition, we find that the Attorney General had standing under the second alternative of § 3613. The District Court held:

> In view of the foregoing injunction no ruling is made on the government's further contention that a group of persons has been denied rights under the Act, first because the evidence here, in the view of the court, is not sufficient to raise an issue of general public importance as required by 42 U.S.C.A. § 3613, and second, because the individuals affected are each assured of a remedy under 42 U.S.C.A. § 3612 in any event.

United States v. Mitchell, *supra,* 335 F.Supp. at 1008. This ruling was error. The District Court's specific finding that appellant had violated § 3604(e) shows the denial of the rights of a group of persons, both white and black, to be free from racial inducements to sell and from the results of such racial inducements.

The District Court erred in requiring evidence that an issue of general public importance was presented. It is not for the District Court to determine when an issue of public importance justifying the intervention of the Attorney General is raised. *See* United States v. Greenwood Municipal Separate School Dist., 5 Cir. 1969, 406 F.2d 1086, 1090. Just as the Attorney General has discretion when to exercise the prosecutorial function in criminal cases, United States v. Cox, 5 Cir. 1965, 342 F.2d 167; Smith v. United States, 5 Cir. 1967, 375 F.2d 243; *contra,* K. Davis, Discretionary Justice (1969), so too the Attorney General must have a wide discretion to determine when an issue of public importance justifying his intervention under § 3613 is raised. *See* Boyd v. United States, E.D.N.Y.1972, 345 F.Supp. 790, 794. Once the Attorney General alleged that he had reasonable cause to believe that a violation of § 3604(e) denied rights to a group of persons and that this denial raised an issue of general public importance, he had standing to commence an action in District Court and to obtain injunctive relief upon a finding of a violation of the Act. *See* United States v. Northside Realty Assoc., 1971, N.D.Ga., 324 F.Supp. 287, 394; *compare* United States v. Greenwood Municipal Separate School Dist., *supra,* with United States v. Ironworkers Local No. 1, *supra,* 438 F.2d at 681–682; *but see* United States v. Hunter, *supra.*

tice. United States v. Mitchell, *supra,* 335 F.Supp. at 1006.

■ Appellant failed to order a transcript of the trial below. As a result, we do not have an adequate record which will permit this Court to find the District Court's fact findings clearly erroneous. In Green v. Aetna Ins. Co., 5 Cir. 1968, 397 F.2d 614, 619, we stated:

"It is the burden of the appellant under Federal Rule of Civil Procedure 75(b) to 'include in the record a transcript of all evidence relevant to such finding * * *.' 'if [he] intends to urge on appeal that a finding * * * is unsupported by the evidence or contrary to the evidence * * *'. See also, Smith v. United States, 287 F.2d 299 (5 Cir. 1961); Horton v. United States Steel, 286 F.2d 710–713 (5 Cir. 1961) and Rea Const. Co. v. B. B. McCormick and Sons, 255 F.2d 257 (5 Cir. 1958)."

The District Court finding that appellant violated the Act does not support appellant's inexplicable contention that "he has done nothing wrong," that he is "perfectly innocent himself," and that the trial court recognized "the complete lack of any evidence of any illegal activities on behalf of Bob Lawrence." Appellant's failure to provide this Court with an adequate record precludes us from finding otherwise. Green v. Aetna Ins. Co., *supra*; Watson v. Button, 9 Cir. 1956, 235 F.2d 235; Jensen v. United States, 9 Cir. 1964, 326 F.2d 891.

Similarly, appellant's argument that an injunction should not have issued because there is no danger that he will violate the Act in the future is misguided. United States v. W. T. Grant Co., 1953, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303, stated the rule of law that governs this case:

"The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one. Here the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts.

Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. Hecht Co. v. Bowles, [321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754], supra; Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co., 242 U.S. 202, 37 S.Ct. 105, 61 L.Ed. 248 (1916). The purpose of an injunction is to prevent future violations, Swift & Co. v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, [314], 72 L.Ed. 587, [597] (1928) and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.

The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations."

United States v. W. T. Grant Co., *supra,* 345 U.S. at 633, 73 S.Ct. at 897, 97 L. Ed. at 1309–1310 (footnotes omitted).

■ The District Court found that injunctive relief was appropriate. Appellant has not shown that the District Court abused its discretion. It does not appear that there was no danger of recurrent violation. In fact, before this Court appellant not only denies any unlawful conduct, in the face of the District Court's explicit finding, but even inexplicably denies to this Court that the District Court made such a finding. He persists in claiming that his agents .

have the right to do in the future what they did in the past. The District Court's broad discretion in granting injunctions in these instances is not easily upset, and in the face of appellant's own inability to recognize his transgressions of the Act, we decline to assume that he will not violate the Act in the future. The District Court correctly exercised its discretion to issue an injunction properly tailored so as to keep interference with appellant's business at a minimum compatible with full compliance with the law. *See,* United States v. West Peachtree Tenth Corp., *supra,* 437 F.2d at 228–229.

## IV. ATTORNEY'S FEES

■ Appellant's contention that equitable principles require that the government pay its attorney's fees is utterly frivolous. The government's suit was neither harassing nor unmeritorious. Equity does not require that the District Court grant attorney's fees to a party found to have violated a federal statute by blockbusting in a racially transitional area.[15]

## V. CONCLUSION

The anti-blockbusting statute, § 3604(e), is an attempt by Congress to disprove the belief, held by many, that the Thirteenth Amendment made a promise the Nation cannot keep. Integrated housing is deemed by many to be an *a priori* requirement before our schools can be realistically integrated. *See generally* Fiss, Racial Imbalance in the Public Schools: The Constitutional Concepts, 78 Harv.L.Rev. 564, 585–588 (1965); Report of the United States Commission on Civil Rights, Racial Isolation in the Public Schools (1967). Brushing these polemics aside, it is indisputable that white flight is a blight upon the democratized society we envision and this Congressional Act is in the mainstream of that vision. We hold that § 3604(e) is a constitutional exercise of congressional authority to enact legislation to effectuate the Thirteenth Amendment. Any informational value that may be found in speech uttered in furtherance of blockbusting is clearly outweighed by the power of Congress to regulate the purely commercial activity of blockbusting. In an attempt to avoid responsibility for violating § 3604(e), appellant has proposed that this Court engraft unnecessary, extraneous requirements upon § 3613, requirements which would hinder the Attorney General's ability to enforce the Fair Housing Act, and which are inconsistent with the language and purpose of § 3613. We refuse to misinterpret § 3613 by reading in requirements not harmonious with the clear intent of the statute. Finding that the District Court properly enjoined appellant from further violation of the Act, we affirm.

Affirmed.

15. Appellant's citation of Headnote 18 Grismer et al. v. Merger Mines Corp., E.D. Wash.1942, 43 F.Supp. 990, is clearly inapplicable, as are all other authorities cited by appellant. In none of those cases were attorney's fees awarded to a losing party.