UNITED STATES of America

v.

UNIVERSITY OAKS CIVIC CLUB, John Baust, President, University Oaks Civic Club, as class representatives of the homeowners of University Oaks subdivision, Houston, Texas.

C.A. No. H–84–4810.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 20, 1987.

Harvey L. Handley, III, Joan A. Magagna and Thomas M. Keeling, Housing and Civ. Enforcement Section, Civ. Rights Div.,

U.S. Dept. of Justice, Washington, D.C., for plaintiff.

H. Miles Cohn, Schlanger, Cook, Cohn, Mills & Grossberg, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

On September 26, 1986, the case at bar was tried to the Court without a jury. A stipulation of facts was presented to the Court prior to the proceeding, and John Baust, the class representative, presented additional evidence at trial. At the termination of the proceedings, the Court rendered a preliminary ruling, declining to hold the Defendants in violation of the Fair Housing Act of 1968, 42 U.S.C. § 3604(c). For the reasons established at trial and more fully set forth below, the Court reiterates its earlier ruling. Due to the unique circumstances under which this case arose, the Court, however, declines to award the Defendants' attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

### Findings of Fact

At the onset, the Court notes that the stipulation of facts adequately supports the ultimate disposition of this matter. However, as a consequence of the testimony of John Baust, the Court has entered additional findings of fact. To the extent that the findings of fact are interpreted as conclusions of law, they are so considered. Conversely, to the extent that the conclusions of law are interpreted as findings of fact, they too are so considered.

1. The area known as University Oaks is a residential subdivision in Houston, Texas. John Baust testified that at the present time the subdivision is highly integrated with minority population estimated at nearly 50% of the residents.

2. The subdivision contains approximately 230 single family residences. (Testimony of John Baust).

3. Defendant University Oaks Civic Club is an unincorporated association of landowners and residents of the University Oaks subdivision organized to enforce residential land use restrictions within the subdivision. (Stipulation of Facts).

4. Defendant John Baust is President of the University Oaks Civic Club and was previously certified as the class representative of the homeowners of the University Oaks subdivision. Mr. Baust owns and resides in a dwelling located in University Oaks.

5. A document stipulated to by the parties as "an instrument containing restrictive covenants" on the use of all lots in the University Oaks subdivision and purporting to bind all subsequent purchasers was recorded in the Deed Records of Harris County, Texas on January 14, 1939. (Exhibit P–1). None of the defendants owned property in University Oaks in 1939, and none participated in any way in the enactment or recording of this document.

6. The document recorded in 1939 contained a covenant which provided:

None of the lots in said addition shall ever be sold, conveyed, leased, or devised to any person or persons other than of the Caucasian race.

7. The document recorded in 1939 provided that the restrictive covenants would expire on January 1, 1970 unless owners of a majority in numbers of front feet of University Oaks lots voted to extend the 1939 instrument containing restrictive covenants from January 1, 1970 until January 1, 1980. The ballots executed by property owners in support of this action were duly recorded in the Deed Records of Harris County. (Exhibit P–2).

8. In November of 1966, owners of a majority in numbers of front feet of University Oaks lots voted to extend the 1939 document from January 1, 1970 until January 1, 1980 as provided by a provision in the 1939 document. The property owners executed ballots in support of this action. Those ballots were duly recorded in the Deed Records of Harris County. (Exhibit P–2).

9. In 1976, owners of a majority in numbers of front feet of University Oaks lots voted to extend the 1939 document containing restrictive covenants from January 1, 1980 to January 1, 1990 by use of a declaration. The declarations executed by property owners in support of this action were duly recorded in the official records of Real Property of Harris County. (Exhibit P–3).

10. Before this suit was instituted on December 9, 1984, the Defendants prepared a declaration to be used to extend the restrictions contained in the 1939 document past 1990. This declaration explicitly disclaims the validity of the restrictive covenant. At the same time this declaration was prepared, the Defendants also prepared an affidavit explaining that the covenant was void and unenforceable and did not represent the views of the residents of University Oaks. The declaration and affidavit were to be filed in the deed records and would be part of the chain of title to property in University Oaks. (Testimony of Dr. Baust).

11. The 1939 document creating the deed restrictions contains a clause which indicates that if any of the provisions are found by a court of law or by statute to be void or unenforceable, the remainder shall be enforceable. (Exhibit P–1).

12. In September, 1980, the Defendant University Oaks Civic Club sent a letter to subdivision residents enclosing the 1939 document containing the restrictive covenants. The letter explained that the restrictive covenant at issue was void and unenforceable and did not in any manner reflect the attitudes of the University Oaks subdivision. (Testimony of John Baust; Exhibit P–1).

13. Sometime during the spring of 1984, a Justice Department official contacted Dr. Baust and explained that the Justice Department was concerned that the subdivision was practicing racially restrictive activities with respect to the sale of housing by virtue of the existence of the restrictive covenant. Concerned by such a suggestion, the University Oaks Civic Club hired legal counsel and commenced extensive negotiations with the Justice Department to implement a resolution that would eradicate any possible intimation that the property owners within the subdivision were perpetuating racially restrictive housing practices. (Testimony of John Baust).

14. Prior to the inception of this lawsuit, the Defendant University Oaks Civic Club and the Justice Department exchanged a number of documents proposing language to be contained in the affidavit to be recorded in the deed records and found in the chain of title to property in the subdivision explaining the community's position that the restriction was null and void. As previously noted, the affidavit was prepared prior to the date that this lawsuit was filed. (Testimony of Dr. Baust).

15. On December 4, 1984, the Justice Department abruptly filed this lawsuit without notifying the subdivision residents that it intended to pursue this course of action. (Testimony of Dr. Baust).

16. On December 11, 1984, the aforementioned affidavit prepared by the Defendants during settlement negotiations and prior to the inception of the suit was recorded in the official deed records for Harris County. This affidavit was executed by John R. Baust on behalf of the University Oaks Civic Club. (Exhibit D–2).

17. Subsequent to December 9, 1984, the Defendant University Oaks Civic Club formally adopted the declaration that was prepared prior to the filing of this suit for the purpose of extending beyond 1990 the instrument containing restrictive covenants for University Oaks. (Exhibit D–3). As previously noted, this declaration disclaims the validity of the restrictive covenant and expresses the subdivision's lack of intent to agree to the inclusion of the covenant.

18. The use of the affidavit was the employed method by which the Defendants disclaimed the offensive language contained within the 1939 document that contained the restrictive covenants. The recording of this affidavit is constructive notice to those searching the deed records. A review of the record in this case revealed

that to amend the deed restrictions to totally delete the covenant prior to the class certification of the University Oaks subdivision would have required the consent of all of the property owners in the subdivision, an avenue which was virtually impossible and financially impracticable for the University Oaks Civic Club which functions through the voluntary participation and contributions of community members. As John Baust noted, to track down the 230 property owners would have required an inordinate amount of time and expense due to outdated tax records and incomplete land records resulting from a rapid turnover of property in the geographic region.

19. By voting to extend the deed restrictions contained in the 1939 document from January 1, 1980 to January 1, 1990, the Defendants had no intent whatsoever to discriminate on the basis of race in the sale or leasing of properties in University Oaks. In fact, the evidence in this case persuasively establishes the contrary viewpoint. The University Oaks subdivision represents an integrated model community. The consistent conduct of the community in striving to obliterate the offensive language is commendable. Throughout these proceedings and the negotiations leading up to the filing of suit, the subdivision consistently demonstrated its desire and willingness to comport with the fair housing laws by welcoming all minorities as homeowners and residents of the community. In addition to the lack of discriminatory intent, none of the Defendants' actions including the execution and recording of ballots prior to 1970 and of declarations prior to 1980 had any discriminatory effect on the sale or leasing of properties in University Oaks. The present composition of the community clearly demonstrates that no national, racial or religious barriers exist. The United States has failed to introduce any proof whatsoever that the Defendants' actions had any impact on the composition of the subdivision.

20. By extending the deed restrictions through the use of a declaration from January 1, 1980 to January 1, 1990, the Defendants did not intend to make, print or publish any statement indicating a racial preference in the sale or leasing of property in University Oaks. While the Justice Department maintains that the Defendants naturally intended the consequences of their actions, the Court declines to find that the University Oaks subdivision members intended to indicate a racial preference by voting to extend the 1939 deed restrictions. At the time the declaration to be used in 1990 was prepared, the University Oaks Civic Club Board had renounced the offensive deed restriction and pointed out to the residents of the community that the clause was void under the statutory law. Considering these facts and the surrounding circumstances in their entirety, there clearly exists no intent whatsoever to publish a racial preference.

21. Neither the ballots executed to extend the expiration date past 1970, nor the declarations executed to extend the expiration date past 1980 contain any reference to the racial restriction found in the original instrument. On their face, the extension instruments simply do not indicate a racial preference in the sale or leasing of property in the University Oaks subdivision. When the Justice Department contacted the Defendants by calling John Baust and notifying him that the declaration was construed as a racial preference, the Defendants acted immediately to disclaim any unintended interpretation that their action could be deemed to violate the Fair Housing Act. The Defendants acted reasonably and promptly by fashioning an affidavit and the declaration to be used prior to 1990 to ensure that the language used in the ballots and declarations would not be read to indicate any racial preference whatsoever.

22. The United States contends that the Defendants intended to make a discriminatory statement because they did not express a contrary viewpoint in the declaration used to extend the covenants from 1980 to 1990. After carefully considering this argument, the Court concludes that it lacks merit. At trial, the United States presented no evidence whatsoever that the

Defendants considered and intended the general language of the declaration to be an extension of a void racial restriction. Indeed, the property owners believed the covenant to be a nullity. The Justice Department's conduct in initiating this lawsuit was imprudent in light of the Defendants' willingness and desire to negotiate a mechanism to dispel any misinterpretation that their actions could be considered a violation of the Fair Housing Act. By filing suit at the moment that it did, the United States succeeded in transforming a previously cooperative scenario into an adversarial proceeding subjecting the Defendants to unnecessary costs, undue hardship and adverse publicity. The Defendants now seek to recover attorney's fees against the United States.

### Conclusions of Law

1. At the outset, the Court is confronted with the issue of whether the United States has standing to bring this suit. The Fair Housing Act authorizes suit by the Attorney General "whenever he has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance." 42 U.S.C. § 3613.

■ 2. The Government need not demonstrate nor must the Court require evidence that an issue of general public importance exists as a prerequisite to the Government's filing suit. Whether or not to file suit is within the discretion of the Attorney General. *United States v. Bob Lawrence Realty*, 474 F.2d 115, 125 n. 14 (5th Cir.1973); *United States v. City of Parma, Ohio*, 494 F.Supp. 1049, 1095 (N.D. Ohio 1980), *aff'd*, 661 F.2d 562 (6th Cir. 1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441, *cf., United States v. Hunter*, 459 F.2d 205 (4th Cir.1972) (District court's determination that case did not raise an issue of public importance held

erroneous; however, the Fourth Circuit left undisturbed the district court's placement of the burden of demonstrating standing under 42 U.S.C. § 3613 on the government.)

Additionally, rigid standing requirements have been relaxed when dealing with restrictive covenants. *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Mayers v. Ridley,* 465 F.2d 630, 641 (D.C.Cir.1972). Therefore, the United States had standing to commence this suit, and the Court's jurisdiction was properly invoked.

■ 3. In order for the Government to prevail on the merits in this case and obtain the declaratory and injunctive relief it seeks, the United States must show that the Defendants either have engaged in a "pattern or practice" of resistance to the full enjoyment of the right to equal housing opportunity, or have denied rights granted by the Fair Housing Act to a group of persons the Attorney General has determined that such denial raises an issue of general public importance. 42 U.S.C. § 3613; *see United States v. Bob Lawrence Realty, Inc.,* 474 F.2d 115, 122–123 (5th Cir.1973). However, the Attorney General is not authorized to enjoin any violation of the Fair Housing Act; otherwise the requirements of § 3613 would be meaningless. *United States v. Pelzer Realty Co., Inc.,* 484 F.2d 438, 445 (5th Cir. 1973).

■ 4. A "pattern or practice" occurs when the discriminatory conduct of Defendants was not an isolated, accidental or peculiar departure from an otherwise nondiscriminatory norm. *United States v. Pelzer Realty Co., Inc.,* 484 F.2d 438 (5th Cir.1973); *United States v. L & H Land Corp., Inc.,* 407 F.Supp. 576 (S.D.Fla.1976); *United States v. Hughes Memorial Home,* 396 F.Supp. 544 (D.C.Va.1975).

■ 5. In a case in which the plaintiff has sufficiently proved a pattern or practice of racial discrimination in housing, a court ... "has not merely the power but the duty to render a decree which will so

far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Louisiana v. United States*, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965). However, the Court is persuaded that the case at bar is simply inappropriate for the judicial intervention which the Government seeks. The Government has demonstrated no pattern or practice of racial discrimination in housing whatsoever. Rather, any alleged violation of the act resulting from the ballots extending the deed restrictions was an aberration, at most, an accidental departure from a long standing policy of openness and racial equality in housing. This conclusion can only be self-evident. The testimony of John Baust clearly indicated that the University Oaks subdivision is a highly integrated community comprised of an extensive minority population. This community is hardly characteristic of the perpetrators of discrimination that the Fair Housing Act has focused upon in the past.

6. The Justice Department, however, urges the Court to declare the Defendants' actions a violation of the Fair Housing Act and to fashion a remedy to prevent further violations. The Justice Department argues that the Defendants have violated 42 U.S.C. § 3604(c). That section makes it unlawful, with certain exceptions, to

> make, print or publish or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex or national origin or an intention to make any such preference, limitation, or discrimination.

7. The Government contends that by executing a ballot to extend the deed covenants at issue in 1980, the Defendants "published" a racial preference, the racial covenant, and thus violated the act regardless of a total absence of discriminatory intent or racial animus. Although the Justice Department has interpreted the Court's preliminary ruling in favor of the

Defendants to be based on a lack of discriminatory intent, such an interpretation is erroneous. The prevalent interpretation of 42 U.S.C. § 3604(c) requires no discriminatory intent for a violation to occur. *See, e.g., United States v. Pelzer Realty Co., supra.* However, the Defendants' lack of discriminatory intent was but one consideration among many factors that leads the Court to the conclusion that the unintentional extension of a void racial covenant was "an isolated, accidental or peculiar departure from an otherwise non-discriminatory norm." *United States v. Pelzer Realty Co., Inc., supra.*

8. The government further contends that by "failing to take action to remove the racially restrictive covenant," the Defendants published a statement of racial preference in violation of the Fair Housing Act, 42 U.S.C. § 3604. The Court observes that this contention is somewhat inconsistent with the position espoused by the United States in the fourth Agreed Applicable Proposition of Law set forth in the parties' Joint Pre-Trial Order. In the pre-trial order, the United States agreed that:

> 4. The Defendants have no lawful authority or ability to withdraw, erase, or otherwise tamper with instruments recorded in the official Records of Real Property of Harris County, Texas.

(Joint Pre-Trial Order at 3).

Although the Plaintiff did stipulate to this statement, it argues that the Defendants should have resorted to state law by either seeking declaratory judgment to remove the deed restriction or by suing the County Clerk for a declaratory judgment that the extension of the deed restrictions, if required to include the racial covenant, would violate Section 3604(c).

The government's "solution" is unfeasible. The United States argues that total deletion of the covenant is the appropriate vehicle to remove the traces of past discrimination. However, the case law so heavily relied upon does not support this result.

The Justice Department relies mainly on *Mayers v. Ridley*, 465 F.2d 630 (D.C.Cir. 1972). The case is clearly distinguishable, yet worthy of discussion. In *Mayers v. Ridley*, homeowners whose deeds contained racially restrictive covenants brought a class action against the Recorder of Deeds to enjoin the Recorder from accepting such covenants for filing in the future. The Court of Appeals reversed the District Court's dismissal of the complaint and held that by filing the deeds, the recorder violated the Fair Housing Act's prohibition against publication. 465 F.2d at 633. In addition to a declaration that their rights had been violated by the recording of racial covenants, the plaintiffs sought further corrective measures. Specifically, an order was requested requiring the recorder to affix a sticker on each liber volume reciting that restrictive covenants found within were null and void as well as an injunction preventing the recorder from providing copies of instruments on file unless a similar notice was attached to the copies. 465 F.2d at 631.

The facts in *Mayers* are clearly distinguishable from those in the case at bar. A major distinction is that in *Mayers*, the recorder of deeds had a well established practice of accepting for publication deeds containing racial covenants and did not dispute the existence of that practice. In this case, however, the Defendants' conduct was merely an isolated event. Moreover, the remedy sought by the homeowners in *Mayers* is extremely similar to the measures taken by the Defendants here prior and subsequent to the United States' filing of this suit. By filing an affidavit disclaiming the deed restriction in the land records with the deed, the plaintiffs achieved essentially the same result that was accomplished by affixing a sticker acknowledging the invalidity of the restrictive covenant. More important, in *Mayers*, total deletion of the covenant was not achieved. The covenant remained intact, although disclaimed and acknowledged to be null and void.

The Court is not pursuaded that the ruling in *Mayers* is dispositive of the present dispute. The result in *Mayers* certainly does not require that the Court order the Defendants to delete the covenant. Nor does *Mayers* require that the Court impose declaratory relief against the Defendants. As previously noted, *Mayers* involved pervasive and repeated acts of publication, while the Defendants' conduct in this instance was sporadic and isolated. The two scenarios are too distinctive to justify the mandatory imposition of a penalty against the Defendants of the cost and magnitude that the United States seeks.

In response to the Plaintiffs' argument that the Defendants should have filed suit against the County Clerk, the Court notes that Anita Rodeheaver, the clerk, has previously been sued and is now required to notify all who receive copies of instruments from her office that racial restrictions are void under federal law. In accordance with Judge Black's unpublished order in *United States v. Anita Rodeheaver, County Clerk*, the clerk must now post in her office and affix to all documents pertaining to real property furnished by her office a notice stating that racially restrictive covenants are void under federal law.

■ 9. The United States is not entitled to injunctive relief. Established principles of equity dictate that in considering whether to grant injunctive relief a court should impose upon a defendant no restriction greater than necessary to protect the plaintiff from the injuries of which he complains. *United States v. Hunter*, 459 F.2d 205, 219 (4th Cir.1972). In the context of the Fair Housing Act, injunctive relief should only be granted "upon a finding that appellants participated in a pattern or practice of violating the Act or upon a finding that appellants have denied a group of persons rights granted by the Act." *United States v. Northside Realty Associates*, 474 F.2d 1164, 1171 (5th Cir.1973). As previously demonstrated, Plaintiff has failed to establish either of the above grounds for injunctive relief. Defendants' actions in recording an affidavit in the Harris County land records is actual and con-

structive notice to potential buyers that the University Oaks residents recognize the invalidity of the covenant. It adequately protects the United States interest in eradicating the vestiges of discrimination in housing.

### Attorney's Fees

10. Defendants have sought to recover attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and (b) by way of a counterclaim. The Plaintiff argues that the counterclaim did not comply with 28 U.S.C. § 2412(d)(1)(B) which provides:

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award.

The Plaintiff asserts that Defendants' motion is not properly before the Court and that to permit counterclaims of this nature would result in a waste of judicial resources. Without belaboring the procedural questions and policy arguments that have been raised regarding the timing of the application, the merits of the request must ultimately be addressed.

11. Defendants' claim for attorney's fees in part arises under 28 U.S.C. § 2412(d), which states:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

12. The test applied by the Fifth Circuit to determine whether the position taken by the Government in a particular action is substantially justified is one of reasonableness. *Russell v. National Medi-*

*ation Board,* 775 F.2d 1284, 1288–89 (5th Cir.1985); *Knights of the Ku Klux Klan v. East Baton Rouge Parish School,* 679 F.2d 64, 68 (5th Cir.1982). *But cf., Haitian Refugee Center v. Meese,* 791 F.2d 1489 (11th Cir.1986), imposing a standard higher than "mere reasonableness" on the Government's behavior. The Fifth Circuit has defined the standard:

Where the government shows that its position had a reasonable basis both in law and in fact, no award will be made; this test is a middle ground between an automatic award to a prevailing party, and a restrictive standard which would have required the prevailing party to show the government's position to be frivolous and groundless.

*Bazaldua v. United States I.N.S.,* 776 F.2d 1266, 1269 (5th Cir.1985).

13. In the case at bar, virtually none of the facts presented were disputed. The central issue before this Court was whether Defendants violated § 804(c) of the Fair Housing Act. Jurisdiction was appropriately invoked, and the parties were properly before the Court. The facts presented were novel, and as the Plaintiff properly points out, where unique facts or questions are involved, courts have found the position of the United States to be "substantially justified." *See, e.g., Minor v. United States,* 797 F.2d 738 (9th Cir. 1986); *Tennessee Baptist Children's Home v. United States,* 790 F.2d 534 (6th Cir.1986). Therefore, the Court is bound by statutory interpretation to deny Defendants' claim for attorney's fees based on 28 U.S.C. § 2412(d).

14. Defendants have also requested attorneys' fees pursuant to 42 U.S.C. § 2412(b). That provision makes the United States:

liable for fees and expenses to the same extent that any party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

The essential thrust of Defendants' argument is that the United States brought this

action in bad faith and is therefore answerable for fees incurred. The government's conduct is certainly not laudatory; however, it is clearly not egregious enough to warrant a finding of "bad faith."

The spectre of attorney's fees should not be raised against the United States to chill the prosecution of difficult and unusual civil rights cases. As the Ninth Circuit has stated, by enacting the Equal Access to Justice Act, Congress did not intend to "discourag[e] the type of vigorous advocacy on the part of government counsel which [it] felt was essential to the enforcement of federal law." *Minor v. United States*, 797 F.2d 738 (9th Cir.1986).

While the Court clearly does not condone the course of conduct followed by the United States, the denial of attorney's fees is appropriate under the unusual circumstances in this case. When the United States filed suit against the defendants, no published case law existed to dissuade the theory propounded. In fact, this case does not dispose of the Government's approach in its entirety. The Court specifically leaves untouched those circumstances where pervasive and repeated acts of homeowners result in continued violations of the Fair Housing Act. What is apparent, however, is that this lawsuit was improvidently filed and has caused the Defendants considerable anguish and financial hardship. The Court, however, is constrained to deny Defendants' request for attorney's fees based upon the unique posture of this case.

Counsel will submit an appropriate judgment incorporating by reference the above Findings of Fact and Conclusions of Law for entry by the Court within twenty (20) days.

It is so ORDERED.