**UNITED STATES of America,**
**Plaintiff,**

v.

**TAIGEN & SONS, INC;**
**et al., Defendants.**

**No. CV01–337–N–EJL.**

United States District Court,
D. Idaho.

Sept. 29, 2003.

Kathleen M. Pennington, Je Yon Jung, Alberto Ruisanchez, U.S. Dept of Justice, Civil Rights/Housing & Civil Enforcement, Washington, DC, for Plaintiff.

John F. Magnuson, Coeur d'Alene, Theresa L. Kitay, Coughlin & Kitay, Norcross, GA, Robert W. Sargent, Spokane, WA, Steven W. Arnold, Boise, ID, for Defendants.

## ORDER

LODGE, District Judge.

This action was initiated by Plaintiff United States of America alleging that Defendants' construction and design of an apartment community in Post Falls, Idaho ("Centennial Trail") violates the accessibility requirements of the Fair Housing Act, as amended, 42 U.S.C. §§ 3601–3619 (the "FHA"), and Title III of the American with Disabilities Act, 42 U.S.C. §§ 12181–89 (the "ADA").[1] Defendants Taigen & Sons, Inc., Robert Taigen, and Jacklyne M. Taigen moved for summary judgment, and Plaintiff moved for partial summary judgment. The motions, which had been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), were heard by Chief Magistrate Judge Larry M. Boyle. On August 22, 2003, Magistrate Judge Boyle issued a Report and Recommendation, recommending that Defendants' Motion for Summary Judgment be granted in part and denied in part, and that Plaintiff's Motion for Partial Summary Judgment be granted.

Defendants object to Magistrate Judge Boyle's recommendation. Any party may challenge a magistrate judge's proposed recommendation regarding a dispositive motion by filing written objections within ten days after being served with a copy of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate judge. *Id.; see also* Fed.R.Civ.P. 72(b).

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). Defendants contend that the magistrate judge erred in finding that (1) Plaintiff's claims raise an issue of "general public importance" sufficient to support the Plaintiff's action under 42 U.S.C. § 3614(a), (2) Plaintiff's claims for compensatory damages are timely under the applicable statute of limitations, and (3) there are no disputed issues of material fact regarding Defendants' liability under the FHA concerning location of toilets, lavatories and electrical outlets.

## Discussion

### 1. General Public Importance

Section 3614(a) of the FHA provides the Attorney General with authority to file a civil action where (1) a person or group of persons has engaged in a pattern or practice of resistance to the rights granted by the FHA, and/or (2) a group of persons has been denied any rights granted by the FHA and such denial raises a matter of general public importance. With regard to the second theory, the magistrate judge concluded that the Attorney General's determination as to whether a denial of rights raises an issue of general public importance is unreviewable by the Court.

---

1. The claim under the ADA is directed against a ground floor unit at Centennial Trail that has been converted into a leasing office.

Defendants assert that the magistrate judge's conclusion is unfounded and that the determination of whether this case raises an issue of general public importance should go to a jury.

Having reviewed the case law, the Court finds that the magistrate judge reached the correct conclusion. The Attorney General's determination that a matter raises an issue of general public importance has been consistently recognized as unreviewable by the courts. *See, e.g., United States v. Reece*, 457 F.Supp. 43, 47 n. 10 (D.Mont. 1978) ("The Attorney General's power to bring suit under 42 U.S.C. § 361[4] may be triggered either by a pattern or practice or an issue of general public importance. While the existence of a pattern or practice is generally a question of fact, courts have generally held that the determination of when an issue of general public importance is raised is left to the discretion of the executive branch."). And therefore the Plaintiff need not demonstrate nor must the court require evidence that an issue of general public importance exists as a prerequisite to the liability determination. *See, e.g., United States v. Northside Realty Associates, Inc.*, 474 F.2d 1164, 1168 (5th Cir.1973), *after remand*, 501 F.2d 181 (5th Cir.1974), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1483, 47 L.Ed.2d 747 (1976); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 125 n. 14 (5th Cir.1973), *cert. denied*, 414 U.S. 826, 94 S.Ct. 131, 38 L.Ed.2d 59 (1973); *United States v. University Oaks Civic Club*, 653 F.Supp. 1469, 1474 (S.D.Tex.1987); *United States v. Housing Authority of City of Chickasaw*, 504 F.Supp. 716, 726 (S.D.Ala.1980); *United States v. Youritan Construction Company*, 370 F.Supp. 643, 651 (N.D.Cal.1973).

## 2. Statute of Limitations for Compensatory Damages

The three-year statute of limitations applicable to compensatory damages under the FHA is subject to an explicit discovery rule. *See* 28 U.S.C. § 2415(b). Pursuant to 28 U.S.C. § 2416(c), the three year limitations period established by § 2415(b) shall exclude "all periods during which ... facts material to the right of action are not known and reasonably could be known by an official of the United States charged with the responsibility to act in the circumstances."

This case originated as a result of an administrative complaint filed with the United States Department of Housing and Urban Development ("HUD"). Pursuant to the FHA, when a complaint of discrimination is filed, HUD is required to investigate. Further, HUD "shall make an investigation of the alleged discriminatory housing practice and complete such investigation within 100 days after the filing of the complaint." 42 U.S.C. § 3610(a)(1)(B)(iv). HUD is to determine "whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur." 42 U.S.C. § 3610(g). If HUD has reason to believe that a basis may exist for the Attorney General to commence an action pursuant to § 3614(a), HUD shall "transmit the information upon which such belief is based to the Attorney General." 42 U.S.C. § 3610(e)(2).

Here, the administrative complaint was filed on February 6, 1998. HUD informed the Department of Justice of a possible referral during the week of August 14, 2000. The Attorney General brought this action on July 7, 2001. The magistrate judge determined that pursuant to the provisions controlling the statute of limitations, the Attorney General first reasonably knew of this matter no earlier than the week of August 1, 2000, and that the action for compensatory damages was timely.

Defendants contend that because HUD did not refer this matter to the Attorney

General until approximately two years after the expiration of the 100–day period, Plaintiff's claim is untimely. The magistrate judge disagreed, noting that courts had determined that the 100–day provision is not mandatory and does not amount to a statute of limitations. (Report and Recommendation at 24). Defendants concede that the 100–day period is not jurisdictional but assert that "the Justice Department should have known of 'the facts material to the right of action' by ... the expiration of 100 days following the filing of the complaint with HUD" and therefore the claim for compensatory damages should be deemed time-barred. (Objections at 10–11).

However, the Court finds nothing in the record to support Defendants' assertion that HUD could have completed its investigation and referred this matter within the 100–day time-frame. And given that the 100–day period is not mandatory and/or jurisdictional there is no authority for the Court's imposition of the same as a statute of limitations. For this reason, the Court concludes that the magistrate judge correctly applied the case law to the record and that his recommendation on this issue is correct.

### 3. Defendants' Liability

Defendants argue that the magistrate judge erred in concluding that no issues of material fact exist to preclude summary judgment on Defendants' liability under the FHA concerning the accessibility of toilets, lavatories and electrical outlets. Having reviewed the record, the Court agrees, and finds that Defendants have raised issues of material fact which preclude the entry of summary judgment as to these matters. (*See, e.g.,* Objections at 14–15).

### ORDER

Having conducted a de novo review of the objected to portions of the Report and Recommendation, this Court finds that, with the exception noted above, Magistrate Judge Boyle's Report and Recommendation is well founded in law and is consistent with this Court's own view of the evidence in the record. Acting on the recommendation of Magistrate Judge Boyle, and this Court being fully advised in the premises, **IT IS HEREBY ORDERED** that except where inconsistent with the Court's analysis above, the Report and Recommendation entered on August 22, 2003, (docket no. 80), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED** in its entirety.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (docket no. 30) is **GRANTED in part** and **DENIED in part** as follow:

1. Plaintiff's claims for civil penalties are **DISMISSED** as to all Defendants; and

2. In all other respects, Defendants' Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (docket no. 36) is **GRANTED** in part and **DENIED** in part as follows:

1. Summary Judgment is **GRANTED** in favor of Plaintiff and against Defendants on the question of whether violations of the FHA raise an issue of general public importance;

2. Plaintiff's Motion for Partial Summary Judgment is **DENIED** as to Defendants' liability for violations of the FHA's requirements concerning accessibility of toilets, lavatories and electrical outlets; and

3. Plaintiff's Motion for Partial Summary Judgment is **GRANTED** in all other respects as to the Defendants' liability for design and construction violations of the

FHA and Defendants' liability for violations of the ADA.

## REPORT AND RECOMMENDATION

BOYLE, United States Chief Magistrate Judge.

Currently pending before the Court are the Taigen Defendants' Motion for Summary Judgment (Docket No. 30) and Plaintiff's Motion for Partial Summary Judgment (Docket No. 36).

Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Report and Recommendation.

## I.

## BACKGROUND

The instant action arises out of alleged violations of the Fair Housing Act,[1] 42 U.S.C. § 3601 et seq, which requires that covered units in multifamily housing complexes constructed after March 13, 1991 contain certain features to make them accessible to persons with disabilities. At issue in the instant action is the design and construction of an apartment complex in Post Falls, Idaho called "Centennial Trail" which consists of 86 apartments in four buildings. Plaintiff alleges that Defendants failed to include some or all of the accessibility features in the design and construction of 32 ground floor apartments. Among the alleged deficiencies, Plaintiff claims that Defendants have failed to design and construct the subject properties to ensure that the public use and common use portions are readily accessible to and usable by individuals with disabilities, all doors are sufficiently wide to allow passage of wheelchairs, there is an accessible route into and through the dwelling, electrical outlets, thermostats and other environmental controls are in accessible locations, reinforcements in bathroom walls allow for installation of grab bars, and kitchens and bathrooms are useable for people in wheelchairs. Complaint ¶ 16.

Plaintiff also alleges violations of Title III of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. Plaintiff alleges that one of the ground floor units, which has been converted into a rental or leasing office, fails to comply with the requirements of the ADA.

The named Defendants are Taigen & Sons, Inc., Robert Taigen and his wife, Jacklyne M. Taigen (collectively "Taigen Defendants"), and DDI Architecture & Planning Company.[2]

## II.

## ANALYSIS

### A. Standard for Summary Judgment

Motions for summary judgment are governed by Fed.R.Civ.P. 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

1. The Fair Housing Act was originally enacted in 1968 and was then amended in 1988 to include "handicap" as a prohibited basis of discrimination. For purposes of this Report and Recommendation, references to the Fair Housing Act refers to the 1988 Act, unless otherwise designated.

2. The Court has not received an answer or any type of pleading from Defendant DDI. On January 16, 2002, the trial judge in the instant action granted Plaintiff's Request for Entry of Default against Defendant DDI Architecture & Planning Co. (Docket No. 14). The Court stated that it "will take Plaintiff's Motion for Default Judgment under advisement until the resolution of this matter as to the remaining defendants is concluded." Id. at p. 2.

moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.[3]

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent,* 523 F.2d 461, 463 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib., Ltd. v.*

*San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626 (9th Cir.1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631. As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a nonmoving party:

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib.,* 882 F.2d at 374 (citation omitted). Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to

---

**3.** *See also* Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
Fed.R.Civ.P. 56(e).

any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983) (citing *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1979)).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the nonmoving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.*

In addressing the application of the "Summary Judgment Test," the Ninth Circuit has specifically explained that:

> A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.,* 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis added).

**B. *Taigen Defendants' Motion for Summary Judgment (Docket No. 30)***

**1. Fair Housing Act**

**a. Attorney General's Authority to Commence an Action**

Section 3614(b) of the Fair Housing Act provides that the Attorney General may commence a civil action after referral by the Secretary. Notwithstanding this referral process, § 3614(a) provides:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in an appropriate United States district court.

42 U.S.C. § 3614(a).

■ As a preliminary matter, the evidence in the record establishes that none of the Taigen Defendants had knowledge of the Fair Housing Act's design and construction requirements. *See, e.g., Affidavit of Robert L. Taigen* ¶¶ 4, 6, 8 (Docket No. 34). Thus, the Taigen Defendants argue that absent knowledge of the Fair Housing Act, they cannot be liable. The Court disagrees.

The Ninth Circuit has held that a violation of § 3604 of the Fair Housing Act can be established by showing either a discriminatory intent *or* a significant discriminatory effect. *Pfaff v. United States Dep't of Housing & Urban Dev.,* 88 F.3d 739, 745 & n. 1 (9th Cir.1996). Further, the Court recognizes that nothing in the plain language of the Fair Housing Act requires that a defendant be aware that they are violating the Act in order to be liable. Accordingly, the Court concludes that the Taigen Defendants' Motion for Summary Judgment should be denied in this respect.

Further, the Taigen Defendants argue that they should be dismissed because Plaintiff cannot establish the requisite "pattern or practice" of discrimination under the Fair Housing Act.

■ In *United States v. Garden Homes Management, Corp.,* 156 F.Supp.2d 413, 420 (D.N.J.2001), the Unit-

ed States District Court for the District of New Jersey stated that "[t]he existence of a pattern or practice of discrimination is a predicate to the Government's ability to maintain a Fair Housing Act suit."[4] To establish a pattern or practice, it is well established that the Government must do more than submit proof of discrimination. It must show "by a preponderance of evidence that ... discrimination was the company's standard operating procedure, the regular rather than the unusual practice." *Garden Homes Management, Corp.*, 156 F.Supp.2d at 420 (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). However, it is also clear that proof of isolated, accidental or sporadic instances of discrimination are insufficient to prove a pattern or practice claim under the Fair Housing Act. *Id.; see also U.S. v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992).

In *Garden Homes,* the court recognized that "there is no threshold number of incidents that must occur before the Government may initiate litigation" as "each case must turn on its own facts." *Id.* at 420 (quoting *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 123-24 (5th Cir.1973)). As a result, the court in *Garden Homes* stated that "[w]hether the evidence presented demonstrates a pattern or practice is ordinarily a question of fact for the jury." *Id.* (citing *Balistrieri*, 981 F.2d at 930 (7th Cir.1992)); *see also United States v. Harrison*, 188 F.Supp.2d 77 (D.Mass.2002) (recognizing that "[t]he question of whether a pattern or practice

exists is a factual determination made by the finder of fact").

After conducting its own extensive independent legal research, the Court is limited on guidance in evaluating "pattern or practice" issues in 42 U.S.C. § 3614(a) actions. The Court was unable to find, nor have the parties cited, any case law which discusses the type of conduct required in order to establish a pattern or practice in the design and construction context. After analyzing the facts and applying what limited law exists, the Court concludes that the issue of whether the Taigen Defendants engaged in a pattern or practice of discrimination with respect to their role in constructing Centennial Trail is a question of fact. Accordingly, the Taigen Defendants' Motion for Summary Judgment should be denied in this respect.

Alternatively, the Court recognizes that in addition to the authority given to the Attorney General to assert a Fair Housing Act cause of action for a "pattern or practice" of discrimination, § 3614(a), the Attorney General may also assert a cause of action when a violation of the Fair Housing Act denies a group of persons their rights under the Fair Housing Act and raises an issue of general public importance. *See, e.g., United States v. Hunter*, 459 F.2d 205, 218 n. 17 (4th Cir.1972); *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 552 (D.C.Va.1975). Courts have uniformly recognized that such a determination is to be made solely by the Attorney General and as such is unreviewable by the Court. *Hunter,* 459 F.2d at 217 n. 13; *Bob Lawrence Realty Inc.*, 474 F.2d at 125 n. 14.

---

**4.** The court in *Garden Homes* also recognized that the Fair Housing Act provides that the Government can bring suit if a violation "raises an issue of general public importance." 42 U.S.C. § 3614(a).*Id.* at 420 n. 7. However, the court in *Garden Homes* did not discuss this ground because the "motion papers focus almost exclusively on the pattern

or practice requirement."*Id.* Similarly, in the instant action, the Taigen Defendants' Motion for Summary Judgment focuses almost exclusively on this requirement. However, the Court will also address whether the Taigen Defendants' conduct jeopardizes important public interests.

■ Based on the case authority which recognizes that an issue of public importance is a determination to be made by the Attorney General, the Court concludes that the Taigen Defendants' alleged violations of the Fair Housing Act raise an issue of public importance. *See United States v. Hartz Constr. Co.*, No. 97–C–8175, 1998 WL 42265 (N.D.Ill. Jan. 28, 1998) ("It is of course obvious that housing that is inadequately designed and constructed to serve persons with disabilities denies that class of persons rights granted by the Act ... [and] that 'denial raises an issue of general public importance.'"). Thus, the Court concludes that if the Taigen Defendants have inadequately designed and constructed Centennial Trail to serve persons with disabilities, the Taigen Defendants have denied a group of persons rights granted by the Fair Housing Act and such a denial raises an issue of general public importance.[5] Therefore, even if the Taigen Defendants actions' do not amount to a "pattern or practice" of discrimination, they can nevertheless be liable for Fair Housing Act violations under the general public importance prong of § 3614(a). Accordingly, the Taigen Defendants' Motion for Summary Judgment should be denied in this respect.

■ The Taigen Defendants also argue they cannot be liable under the Fair Housing Act because Plaintiff has not identified a "group of persons" denied rights as a result of the alleged violations at Centennial Trail. However, cases addressing this issue have concluded that at the liability stage, the government is "not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the ... discriminatory policy." *Davoll v. Webb*, 194 F.3d 1116, 1147–48 (10th Cir. 1999); *United States v. Balistrieri*, 981 F.2d 916, 935 (7th Cir.1992) (stating that "nothing in the Act demands, or even implies, that damages are proper only for people the government knows about at the time it files its complaint").

After a careful review of case authority and the language of the Fair Housing Act, the Court concludes there is not a requirement that Plaintiff specifically identify all of the alleged "victims" of discrimination. Accordingly, the Taigen Defendants' Motion for Summary Judgment should be denied on this ground.

**b. Statute of Limitations**

**i. Applicability of the Continuing Violation Doctrine**

■ The Taigen Defendants argue that Plaintiff's causes of action are barred by applicable statute of limitations. Plaintiff argues, however, that the Taigen Defendants' violations of the Fair Housing Act constitute "continuing violations" that prevent the applicable statute of limitations from beginning to run.

In the context of alleged Fair Housing Act violations, the Ninth Circuit has not addressed whether the continuing violations doctrine is applicable in design and construction cases brought pursuant to the Fair Housing Act.[6] A review of cases from

---

**5.** *See also United States v. Pacific Northwest Electric, Inc., et. al,* District of Idaho Case No. CV 01–019–S–BLW (concluding that the defendants had denied a group of persons with disabilities rights granted by the Fair Housing Act and that the denial of those rights raises an issue of general public importance) (Docket No. 289).

**6.** The Court notes that the Ninth Circuit has applied the continuing violations doctrine in cases arising under the ADA. *See e.g., Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133 (9th Cir.2002); *Douglas v. California Dep't of Youth Authority,* 271 F.3d 812, 822 (9th Cir. 2001). The Court, however, concludes that *Pickern* and *Douglas* are distinguishable from the instant action in that the plaintiffs in those cases were not asserting claims for the defen-

other jurisdictions demonstrates that several courts have concluded that design and construction violations of the Fair Housing Act constitute a continuing violation. *See, e.g., Montana Fair Housing, Inc. v. American Capital Dev., Inc.,* 81 F.Supp.2d 1057 (D.Mont.1999); *Eastern Paralyzed Veterans Ass'n v. Lazarus–Burman Assocs.,* 133 F.Supp.2d 203 (E.D.N.Y.2001); *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc., et al.,* 250 F.Supp.2d 706 (W.D.Ky.2003). However, such a conclusion has not been uniform. Recently, a Virginia court rejected the continuing violations doctrine in a design and construction case. *Moseke v. Miller and Smith, Inc.,* 202 F.Supp.2d 492 (E.D.Va.2002). Further, in a case currently pending in the District of idaho, *United States v. Pacific Northwest Electric, Inc., et. al,* Case No. CV 01–019–S–BLW (hereinafter "*PNE*"), the presiding judge concluded that the continuing violation theory is inapplicable in circumstances analogous to those presented here.

In *Moseke,* a disabled person and a fair housing organization brought an action against developers, architectural firms, and a condominium association. Thereafter, the defendants moved to dismiss the complaint on the grounds that the plaintiffs' construction and design claims were not timely filed within the Fair Housing Act's two year statute of limitations period applicable to a private cause of action brought pursuant to 42 U.S.C. § 3613. The court focused its analysis on the stat-ute of limitations at issue which required that a plaintiff file a lawsuit within two years after the "*occurrence* or *termination* of an alleged discriminatory *practice.*" *Id.* at 507 (quoting 42 U.S.C. § 3613(a)(1)(A)) (emphasis in original). Thus, the court in *Moseke* reasoned that "the plain language of the FHA indicates that an act, whether one or in a series of many, or a single discrete occurrence, is necessary within the limitations period or the claim falls outside the statute of limitations." *Id.* at 503.

In its analysis, the court in *Moseke* analyzed *Havens Realty Corporation v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), which addressed the continuing violation doctrine in gender and racial discrimination contexts for "instructive guidance in applying the rule to a disability discrimination claim under the FHA." 202 F.Supp.2d at 504. In *Havens,* the plaintiffs alleged that apartment employees falsely informed potential black renters there were no available apartments, while informing potential white renters that apartments were available. The Supreme Court of the United States in *Havens* recognized that plaintiffs challenged "an unlawful practice that continues into the limitations period." 455 U.S. at 381, 102 S.Ct. 1114. Therefore, the Court in *Havens* adopted the continuing violation doctrine in concluding that the action was not time barred. *Id.*

dants' failure to design and construct apartments in conformity with the Fair Housing Act, but were rather seeking relief based on allegations of being "subjected to discrimination" or "about to be subjected to discrimination" pursuant to the ADA. 42 U.S.C. § 12188(a)(1). Thus, the Court concludes that under the applicable language of the ADA, that type of discrimination did not involve a one time, finite act of discrimination, but ongoing discrimination. Thus, the Court concludes that under those circumstances, application of the continuing violations doctrine was appropriate. In contrast to the ADA, § 3604(f)(3) of the Fair Housing Act does not contain the same language of the ADA as discussed by the court in *Pickern* and *Douglas.* Rather, the Fair Housing Act, § 3604(f)(3), refers only to the "failure to design and construct." Therefore, as will be discussed, the Court concludes that the Fair Housing Act does not contain any basis for applying the continuing violations doctrine.

In declining to follow *Havens*, the court in *Moseke* recognized that "the Supreme Court has consistently held that a continuing violation was not present where there was a subsequent effect resulting from the defendant's prior discriminatory act ... The critical question is whether any present violation exists." 202 F.Supp.2d at 506 (citing *United Air Lines v. Evans*, 431 U.S. 553, 557, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). Based on its analysis of the case authority, the court concluded that "it is clear that the continuing effects of a previous discriminatory act do not constitute a continuing violation." *Id.* at 507. As a result, that court held that an "FHA non-compliant building which contains inaccessible features to disabled persons is more akin to a continuing effect rather than a continuing violation under the FHA." *Id.* Thus, the court concluded that the statute of limitations barred the plaintiffs' claim because it "failed to plead that Defendants committed an act within two years of when the Complaint was filed." *Id.* at 510.

In support of its holding, the court in *Moseke* distinguished *Eastern Paralyzed*. In *Eastern Paralyzed*, the plaintiffs brought a claim against a developer alleging that a housing project was not wheelchair accessible, in violation of the Fair Housing Act. Relying on *Havens*, the court in *Eastern Paralyzed* concluded that "[t]he challenged discriminatory housing practice is clearly a continuing violation." 133 F.Supp.2d at 213. The court in *Moseke* found the reasoning and conclusion from *Eastern Paralyzed* unpersuasive because the court in *Eastern Paralyzed* "simply assumed that a racial steering housing allegation was tantamount to a disability design and construction claim." 202 F.Supp.2d at 508.

After carefully reviewing the circumstances of the instant action, the Court is of the view *Moseke* is persuasive as the alleged "failure to design and construct" in compliance with the Fair Housing Act has a continuing *effect* rather than constituting a continuing *violation* of the Act. Therefore, the Court concludes that the continuing violations theory is not applicable for purposes of design and construction cases pursuant to the Fair Housing Act.

The Court recognizes that the circumstances of *Moseke* were in the context of a private right of action which has an express statute of limitations, whereas the instant action is one brought by the Attorney General. Thus, Plaintiff argues that *Moseke* is distinguishable.

In this regard, the court in *PNE* found the reasoning in *Moseke* "to be persuasive despite the fact that it involved a private right of action rather than an action by the United States." Order dated 3/19/03, p. 12. In *PNE*, the court reasoned that "[t]here have been no 'acts' by Defendants since that time that violate the FHA and the mere fact that the *effects* of Defendants' allegedly discriminatory acts are continuing does not convert Defendants' previous acts into a continuing violation." *Id.* at p. 13. Therefore, in that action, the conclusion reached was that "the Court finds the continuing violations doctrine to be inapplicable to a claim seeking civil penalties under § 3614(d)(1)(C) for violation of § 3604(f)(3)(C)."

Similarly, this Court concludes that the differences between a private cause of action and an action commenced by the Attorney General do not distinguish *Moseke* for purposes of the applicability of the continuing violations doctrine. Rather, the Court is of the view that differences in the types of actions presented for judicial review affect the time when the applicable statute of limitations is triggered. Those events and actions will be discussed below.

Plaintiff further argues that the conclusion from *PNE* is distinguishable because in the instant action there were continuing

acts that violate the Fair Housing Act. For example, the record demonstrates that two disabled tenants at Centennial Trail complained about their difficulty in accessing their apartments. *Declaration of Joseph Roman* (Docket No. 44); *Declaration of Carley Wright* (Docket No. 45). Specifically, in response to Joseph Roman's complaint about the narrow master bathroom door, the apartment manager initially did not do anything, but then removed the bathroom door at Roman's request. *Roman Decl.* ¶ 4. Similarly, another tenant, Helen Ozbun complained about the difficulty in accessing the bathroom because of the configuration of the bathroom and hallway/bedroom doors. *Wright Decl.* ¶ 5.[7] In response, the apartment manager removed the hallway/bedroom door. *Id.*

In the Court's view, in order to be considered an "act" of discrimination there must be a "failure to design and construct." *See* 42 U.S.C. § 3604(f)(3). The Court concludes that the removal of a door does not amount to an "act" of discrimination for purposes of applying the continuing violations doctrine. Rather, the Court concludes that the design and construction of the complex is complete, and the removal of the doors is more akin to a continuing effect of inaccessibility. *See Moseke,* 202 F.Supp.2d at 505. Therefore, the Court concludes that these actions do not provide a basis to invoke the continuing violation theory.

Further, the Court recognizes that in 2001, the leasing office at Centennial Trail was relocated from the second floor to the ground floor. *Taigen Aff.* ¶ 9. However, there is no evidence in the record that the first floor unit was modified in any way by design or construction. Therefore, the Court concludes this action did not constitute an act of design or construction for purposes of applying the continuing violation doctrine.

Finally, Plaintiff argues that HUD's interpretation of the Fair Housing Act should be given deference. *See Meyer v. Holley,* 537 U.S. 280, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (stating that "we ordinarily defer to an administrative agency's reasonable interpretation of a statute"). According to HUD's Design Manual, "[w]ith respect to the design and construction requirements, complaints could be filed at any time that the building continues to be in noncompliance, because the discriminatory housing practice—failure to design and construct the building in compliance—does not terminate." HUD Design Manual, p. 22 (attached to *Plaintiffs' Response to Taigen Defendants' Supplemental Pleading* (Docket No. 74)).

A review of *Meyer,* however, indicates that the deference the Court gave to HUD's interpretation was with respect to *regulations* set forth in the Code of Federal Regulations. After conducting its own independent legal research, the Court is unaware of any regulations that indicate that the continuing violation doctrine applies in design and construction cases. Thus, it is not required that the Court give deference to HUD's guidance in its Design Manual to the same extent that it would to an express regulation. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (recognizing that "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute").[8] Therefore, the Court concludes

---

7. Helen Ozbun is Carley Wright's mother. *Wright Decl.* ¶ 1.

8. The Court recognizes that in *United States v. Edward Rose & Sons,* 246 F.Supp.2d 744 (E.D.Mich.2003), the court concluded that

HUD's interpretation of the Fair Housing Act was entitled to deference based in part on HUD's comments in its Design Manual. However, a review of the case demonstrates that the court's deference was in conjunction

that the continuing violation doctrine is inapplicable for purposes of the design and construction case presented here.

### ii. Civil Penalties

■ Generally, an action seeking civil penalties must be "commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." 28 U.S.C. § 2462. Since there is no applicable statute of limitations when the Attorney General commences a cause of action, courts have recognized this five year limitations period applies when civil penalties are sought in Fair Housing Act cases. *See, e.g., United States v. Incorporated Village of Island Park,* 791 F.Supp. 354, 364–68 (E.D.N.Y.1992) ("*Island Park I*"); *United States v. Harrison,* 188 F.Supp.2d 77 (D.Mass.2002).

In the instant action, the parties do not dispute that the applicable statute of limitations is codified in 28 U.S.C. § 2462. Rather, the parties dispute the application of the statute to the instant circumstances.[9] The Taigen Defendants argue that Centennial Trail was completed on December 4, 1995 by virtue of the certificates of occupancy issued by the City of Post Falls, *Taigen Aff.* Ex. A., and the statute of limitations began to run on that date. Thus, the Taigen Defendants argue Plaintiff's claim filed on July 7, 2001 is barred by the five year statute of limitations.

In opposition, Plaintiff argues that because § 3614(a) of the Fair Housing Act requires that the Attorney General have a "reasonable cause to believe" there has been a violation of the Fair Housing Act, the claim for civil penalties cannot accrue until that time. Plaintiff argues that the earliest date it knew, or reasonably should have known of these facts was during the week of August 14, 2000. *Declaration of Judith Keeler* ¶ 2 (Docket No. 43). Thus, Plaintiff argues that its claim for civil penalties is timely.

As indicated above, an action seeking civil penalties must be "commenced within five years from the date when the claim first *accrued.*" 28 U.S.C. § 2462. Although not discussed in detail by the Ninth Circuit, the Court of Appeals for the District of Columbia has recognized that "[a] claim normally accrues [under § 2462] when the factual and legal prerequisites for filing suit are in place." *3M Co. v. Browner,* 17 F.3d 1453, 1460 (D.C.Cir. 1994).

In *3M,* the court analyzed a claim involving the alleged failure by the plaintiff to file notices with, and the submission by plaintiff of inaccurate certificates to, the Environmental Protection Agency ("EPA"). In its analysis, the court in *3M* examined the language of § 2462, its legislative history, and the applicability of a "discovery" rule under the statute. The court in *3M* went on to hold:

[A]n action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty. We reject the discovery of violation rule [respondent] advocates as unworkable; outside the language of the statute; inconsistent with judicial interpretations

with a regulation in the Code of Federal Regulations. As indicated above, the Court is unaware of any federal regulation that indicates that the continuing violation doctrine is appropriate, and thus, *Edward Rose & Sons* is distinguishable from the instant action.

9. As discussed above, Plaintiff argues that the continuing violations doctrine is applicable in the instant action. Alternatively, Plaintiff argues that even if the continuing violations doctrine is inapplicable, its claim for civil penalties is still not time-barred.

of 2462; unsupported by the discovery of injury rule adopted in non-enforcement, remedial cases; and incompatible with the functions served by a statute of limitations in penalty cases.

*Id.* at 1462–63.

In *Federal Election Commission v. Williams*, 104 F.3d 237, 240 (9th Cir.1996), the Ninth Circuit agreed with the holding in *3M* and likewise rejected the application of the discovery rule to the running of the statute of limitations periods under § 2462.

The Court recognizes that *3M* and *Williams* did not involve a claim pursuant to the Fair Housing Act. However, in *PNE* the court found these cases to be persuasive. Order dated 3/19/03, p. 14. After carefully analyzing the issue, the district court rejected the discovery rule and held that "a cause of action seeking imposition of civil penalties for violations of 42 U.S.C. § 3604(f)(3)(C) accrues on the date the violation occurs, which is the date on which the design and/or construction is completed." *Id.* at p. 18.

Similar to the conclusion reached in *PNE,* this Court finds the reasoning and analysis from *3M* and *Williams* persuasive. In the instant action, Plaintiff seeks to read a discovery rule into § 2462 by arguing that the legal prerequisites are not in place for purposes of accrual of the action until the Attorney General has "reasonable cause to believe" there has been a violation of the Fair Housing Act. However, Plaintiff has not cited, nor was the Court independently able to find, authority to support this position. Rather, the cases discussed above expressly rejected the discovery rule for purposes of applying the statute of limitations found in § 2462. Therefore, in the absence of a discovery rule, and as concluded by the court in *3M,* an action must be commenced within five years of the date of the violation. 17 F.3d.

at 1462–63. Thus, the Court concludes that Plaintiff's cause of action for civil penalties under the Fair Housing Act must be commenced within five years of the date of the alleged violation, which is the date the design or construction was completed.[10]

According to the record, the Court concludes that the latest date that could be considered the date the design or construction was completed was December 4, 1995, the date the last certificate of occupancy was issued. Since the instant action was not commenced until five years after this date, the Court concludes that Plaintiff's claim for civil penalties under the Fair Housing Act is barred. Accordingly, the Taigen Defendants' Motion for Summary Judgment should be granted in this respect.

### iii. Compensatory Damages

■ The parties do not dispute that in "pattern or practice" cases under the Fair Housing Act in which damages are sought under 42 U.S.C. § 3614(d)(1)(B), "the Government's claims are in the nature of a tort claim, and thus the three year statute of limitations period of [28 U.S.C. § 2415(b)] applies." *United States v. Marsten Apartments, Inc.,* 175 F.R.D. 257, 263 (E.D.Mich.1997) (citing *United States v. Limbs,* 524 F.2d 799, 801 (9th Cir.1975)). Pursuant to 28 U.S.C. § 2415(b), actions sounding in tort "shall be barred unless the complaint is filed within three years after the right of action first accrues." However, unlike the statute of limitations with respect to civil penalties, the three year time limit is subject to an exception. Pursuant to 28 U.S.C. § 2416(c), for purposes of computing the limitations period established in § 2415, there shall be excluded all periods during which "facts material to the right of action are not known

---

**10.** *See also PNE* Order dated 3/19/03 at p. 18.

and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."

In the instant action, Plaintiff seeks compensatory damages pursuant to 42 U.S.C. § 3614(d)(1)(B). The Taigen Defendants argue that Plaintiff's claims are time-barred because the Complaint was not filed within three years of the date that the Attorney General knew or should have known of alleged violations of the Fair Housing Act, via a complaint filed by the Idaho Fair Housing Council ("IFHC") with HUD on February 6, 1998. In opposition, Plaintiff argues the earliest it knew, or should have known of the alleged unlawful discrimination was during the week of August 14, 2000 when HUD Regional Director Judith Keeler had a discussion with counsel for the Department of Justice regarding a possible referral of the IFHC complaint for prosecution. *Keeler Decl.* ¶ 2 (Docket No. 43).[11]

██ Although it did not decide when the three year statute of limitations pursuant to § 2415 begins to run, the court in *Island Park I* analyzed a statute of limitations issue regarding an alleged violation of the False Claims Act. 791 F.Supp. 354. Under the facts of that case, the Government argued that its claim was timely because it was brought within "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." *Id.* at 361 (citing 31 U.S.C. § 3731(b)(2)). In its analysis, the court in *Island Park I* recognized that a claim under the False Claims Act "may only be initiated either by the Attorney General of the United States or by a private person in the name of the United States." *Id.* at 362. The court in that case concluded the limitations period was tolled until officials at the Department of Justice knew or should have known of the facts material to the right of action. *Id.* at 363.

With that standard in mind, the court in *Island Park I* concluded that the officials at the Department of Justice should have known of the alleged wrongdoing on the day HUD released a particular audit report. *Id.* The court in *Island Park I* reasoned "[t]hat audit report was widely disseminated throughout the United States government; any one of the many officials to which it was sent could have—and should have—referred the matter to the Department of Justice."[12] *Id.* That court went on to state "it cannot be but the Department of Justice 'should have ... known' through the exercise of 'due diligence' about these matters at the time that they were well known throughout the rest of the United States Government." *Id.* As a result, the court in *Island Park I* ruled that the claim pursuant to the Fair Claims Act was untimely.

After conducting its own independent legal research and studying the briefs of counsel, the Court finds that no court has addressed precisely when the Attorney General, through the Department of Justice or its officials, is charged with knowing, or reasonably could have known, of facts material to a cause of action for triggering the statute of limitations pursuant to 28 U.S.C. § 2415. However, the

---

**11.** Keeler goes on to explain that on September 1, 2000, HUD transferred the investigation file to the Department of Justice for prosecution, and that on September 5, 2000, HUD Headquarters formally referred the case to the Assistant Attorney General for Civil Rights

pursuant to 42 U.S.C. § 3614(a). *Keeler Decl.* ¶¶ 3–4.

**12.** The court in *Island Park I* noted that the audit report "was so widely available that it was cited extensively by [a] newspaper article." 791 F.Supp. at 364.

Court is of the view that the analysis of the court in *Island Park I* is helpful in analyzing the circumstances presented here.[13]

In *PNE*, this Court reasoned that the earliest the Department of Justice knew, or reasonably could have known of the units allegedly in violation of the Fair Housing Act was at the time the HUD complaints were filed. Report and Recommendation dated 11/20/02, p. 14 (Docket No. 228). However, a review of that Report and Recommendation demonstrates that this Court did not need to decide whether the date the HUD complaints were filed triggered the statute of limitations because both this date and the date the Department of Justice was notified by HUD were both within the three year statute of limitations period. *Id.*

▇▇▇ In the instant action, however, if the applicable date to trigger the statute of limitations is the date the HUD complaint was filed, then Plaintiff's claim for compensatory damages would be beyond the three year period. Therefore, unlike the circumstances presented in *PNE*, the Court must decide this issue.

Pursuant to the Fair Housing Act, when a complaint of discrimination is filed with HUD, HUD is required to investigate. 42 U.S.C. § 3610(a)(1); 24 C.F.R. §§ 103.15–103.40. After completing the investigation, HUD must determine whether or not reasonable cause exists to issue a charge of discrimination. 42 U.S.C. § 3610(g); 24

C.F.R. §§ 103.400–103.405. During its investigation, whenever HUD has reason to believe that a basis may exist for the Attorney General to commence an action pursuant to § 3614(a), HUD shall "transmit the information upon which such belief is based to the Attorney General." 42 U.S.C. § 3610(e)(2); 24 C.F.R. § 103.500(b).

Therefore, based on the discovery rule exception applicable to a claim for compensatory damages, the Court is of the view that the Attorney General may not have known or reasonably could have known, of a cause of action until it had a reason to believe that a cause of action existed through HUD's referral of the action. Prior to that time, while the Attorney General may have been aware of a complaint being filed with HUD, the prerequisites for filing suit were not in place until its referral from HUD.

As discussed above, the court in *Island Park I* concluded that due to the widely disseminated audit report, the United States should have referred the matter to the Department of Justice. 791 F.Supp. at 363. In the instant action, under the procedures of the Fair Housing Act, the court concludes that the Department of Justice was not made aware of a possible referral for a cause of action until the week of August 14, 2000. Thus, the Court concludes that the statute of limitations began to run during the week of August 1, 2000 and, as a result, Plaintiff's claims for compensatory damages would be timely.[14] *See*

---

13. The Court notes that in the Order regarding this Court's Report and Recommendation in *PNE*, the district court found the "implicit application ... of a discovery of violation theory" by the court in *Island Park I* "unpersuasive." Order dated 3/19/03, p. 14. However, rejection of this reasoning was limited to a discussion of civil penalties. As to compensatory damages, as the Court likewise reasoned in its Report and Recommendation, the Court finds the analysis of the court in *Island Park I* "instructive and helpful." Report and

Recommendation dated 11/20/02, p. 13 (Docket No. 228).

14. Although the Taigen Defendants do not specifically argue that Plaintiff's claims for punitive damages should be dismissed, the Taigen Defendants do argue that "applicable statute of limitations ... bar the remainder of Plaintiff's claims." *Taigen Defendants' Mem. in Support*, p. 16 (Docket No. 31). The Court concludes that Plaintiff's claims for punitive damages "are in the nature of a tort claim,"

*United States v. Harrison,* 188 F.Supp.2d 77, 81 (D.Mass.2002) (concluding without discussion that the limitations period began to run when HUD referred the matter to the Department of Justice).

The Court also notes that the Taigen Defendants argue that Plaintiff's claims for compensatory damages should be dismissed for HUD's failure to timely refer the matter to the Department of Justice.

According to the Fair Housing Act, the Secretary "shall make an investigation of the alleged discriminatory housing practice and complete such investigation within 100 days after the filing of the complaint." 42 U.S.C. § 3610(a)(1)(B)(iv). Further, the Fair Housing Act provides that the Secretary shall, within 100 days after the filing of the complaint, determine "whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur." *Id.* § 3610(g). The Taigen Defendants argue that because HUD did not refer the matter until approximately two years after the expiration of the 100 day limit, Plaintiff's claim for compensatory damages should be dismissed.

Although not addressed by the Ninth Circuit, courts have determined that the 100 day provision is not mandatory and does not amount to a statute of limitations. *See, e.g., United States v. Nally,* 867 F.Supp. 1446, 1452 (N.D.Cal.1994); *United States v. Scott,* 788 F.Supp. 1555, 1558 (D.Kan.1992). After conducting its own independent research, the Court is unaware of any case authority that would bar Plaintiff's claim for compensatory damages for HUD's failure to refer the matter to the Department of Justice within 100 days. Therefore, the Court concludes that Plaintiff's claim for compensatory damages should not be dismissed. Accordingly, the

and the statute of limitations of three years found in § 2415(b) applies. Thus, for the same reasons as discussed with respect to

Taigen Defendants' Motion for Summary Judgment should be denied in this respect.

**c. Injunctive Relief**

According to the prayer for relief in Plaintiff's Complaint, it seeks an order which:

Enjoins the defendants, their officers, employees, agents, successors and all other persons in active concert or participation with any of them, from:

a. Failing or refusing to bring the ground floor units and public use and common areas at the subject properties into compliance with 42 U.S.C. § 3604(f)(3)(C);

b. Failing or refusing to bring the rental office and any other public accommodations at the subject property into compliance with the requirements of Title III of the ADA and the Department of Justice's regulations implementing Title III, including the Standards for Accessible Design;

c. Designing or constructing covered multifamily dwellings in the future that do not contain the accessibility and adaptability features required by 42 U.S.C. § 3604(f)(3)(C) . . . .

*Complaint,* pp. 6–7.

The Taigen Defendants argue that the injunctive relief requested by Plaintiff is inappropriate as Plaintiff is only permitted to seek preventative injunctive relief. *See* 42 U.S.C. § 3614(d)(1)(A). Further, the Taigen Defendants argue that retrofitting the alleged noncompliant apartments would be an unduly burdensome expense.

With respect to a private cause of action, pursuant to 42 U.S.C. § 3613(c)(1), it is clear that the court "may grant as relief, as the court deems appropriate, any per-

Plaintiff's claims for compensatory damages, Plaintiff's claim for punitive damages should not be dismissed.

manent or temporary injunction, temporary restraining order, or other order ...." When a cause of action is brought pursuant to § 3613, several courts have determined that the defendants may be required to retrofit inaccessible housing. *See, e.g., Balachowski v. Boidy,* 2000 WL 1365391 at \*14–15 (N.D.Ill. Sept. 20, 2000); [15] *Baltimore Neighborhoods, Inc., v. LOB Inc.,* 92 F.Supp.2d 456, 467 (D.Md. 2000).

Pursuant to 42 U.S.C. § 3614(d)(1), applicable to cases brought by the Attorney General, in addition to specifically providing that a court may award "preventative relief," the statute also provides that a court "may award other such relief as the court deems appropriate...." *Id.* § 3614(d)(1)(B). To this end, the Fifth Circuit Court of Appeals has stated that in "pattern or practice" cases, "[a]ppropriate relief for violations of the Act is to be determined on a case-by-case basis" and that "[r]elief should be aimed toward twin goals insuring that no future violations of the Act occur and removing any lingering effects of past discrimination." *United States v. Jamestown Center–In–The–Grove Apartments,* 557 F.2d 1079, 1080 (5th Cir. 1977).

In the Court's view, the injunctive relief available to Plaintiff is broad, and not just limited to preventative relief. Thus, the Court is of the view that injunctive relief may include an order that the Taigen Defendants be required to retrofit the complex. The Taigen Defendants have not supported their argument by citing any case authority that would limit imposition of injunctive remedies nor that the expense of an injunction is grounds to deny an injunction. Accordingly, the Taigen Defendants' Motion for Summary Judgment should be denied in this respect.

#### d. Jacklyne Taigen as a Named Defendant

██ The Supreme Court of the United States recently made it clear that although the Fair Housing Act does not expressly provide who can be liable for discriminatory housing practices, "it is well established that the Act provides for vicarious liability." *Meyer v. Holley,* 537 U.S. 280, 123 S.Ct. 824, 827, 154 L.Ed.2d 753 (2003); *see also Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.,* 3 F.Supp.2d 661, 664 (D.Md.1998) ("*Rommel 1* "). Thus, under the principals of vicarious liability, a principal or employer is liable for acts of their agents or employers in the scope of their authority or employment.

In the instant action, however, Plaintiff is not attempting to hold Mrs. Taigen liable for the acts of one of Taigen & Sons' employees under her management and control, but rather seeks imposition of liability for Mrs. Taigen's personal participation in the construction of Centennial Trail. Thus, the Court is of the view that *Meyer* is not particularly instructive in the circumstances presented here.

Although this precise issue has not been directly addressed by the Ninth Circuit Court of Appeals, a federal district court in Montana has addressed a situation analogous to the instant action. *Montana Fair Housing, Inc. v. American Capital Dev., Inc.,* 81 F.Supp.2d 1057, 1063 (D.Mont. 1999). In *Montana Fair Housing,* the plaintiff brought an action against the architect, builder and owners for the failure to design and construct a housing project with specified features required by the Fair Housing Act. In that case, the named defendants were business entities, as well as individuals, two of which were partners in a named business entity who actively participated in the development, design,

---

**15.** Only the Westlaw citation is currently available for this case.

construction, and management of one of the buildings. *Id.* at 1059. In its discussion concerning the defendants' liability, the court in *Montana Fair Housing* recognized that the two individuals "are behind each of these corporate veils" as the individuals are the ones that designed, constructed, managed, and continued to profit from the project. *Id.* at 1068–69.

Relying on *Rommel I*, the court in *Montana Fair Housing* recognized that "design and construction language [of the FHA] should be read broadly." *Id.* at 1069 (citing *Rommel I*, 3 F.Supp.2d at 665). The court in *Montana Fair Housing* concluded that "[w]hen a group of entities enters into the design and construction of a covered dwelling, all participants in the process as a whole are bound to follow the FHA . . . . In essence, any entity who contributes to a violation of the FHA would be liable." *Id.* (citing *Rommel I*, 3 F.Supp.2d at 665). As a result, the court in *Montana Fair Housing* determined that the named parties were proper defendants.

According to the record, Mrs. Taigen was an owner of the land on which Centennial Trail was built. *Plaintiff's Statement of Undisputed Facts* Ex. 2 at ¶ 2 (Docket No. 39). The record also indicates that she was involved in obtaining financing for the construction and also wrote checks for building permits. *Deposition of Robert Taigen, Sr.*, pp. 9, 22, 68 (*Plaintiff's Statement of Disputed Facts* Ex. 1) (Docket No. 41); *Deposition of Robert Taigen, Jr.*, pp. 22–24 (*Plaintiff's Statement of Disputed Facts* Ex. 2).

In the Court's view, there is a genuine issue of material fact as to whether Mrs. Taigen's involvement is sufficient to subject her to liability. Accordingly, the Taigen Defendants' Motion for Summary Judgment should be denied in this respect.

## 2. ADA

As discussed above, Plaintiff also asserts a Title III ADA cause of action for alleged design and construction violations of the rental office at Centennial Trail. Although the Taigen Defendants seek summary judgment on all of Plaintiff's claims, the Taigen Defendants focus exclusively on the Fair Housing Act.

A review of the ADA demonstrates that it contains similar language to the Fair Housing Act in giving the Attorney General authorization to file a civil complaint. According to the ADA:

> If the Attorney General has reasonable cause to believe that -
>
> (i) any person or group of persons is engaged in a pattern or practice of discrimination under this subchapter; or
>
> (ii) any person or group of persons has been discriminated against under this subchapter and such discrimination raises an issue of general public importance, the Attorney General may·commence a civil action in any appropriate United States district court.

42 U.S.C. § 12188(b)(1)(B).

According to the Complaint, "the defendants have failed to design and construct Centennial Trail so that the rental office is readily accessible to and usable by individuals with disabilities, as required by 42 U.S.C. § 12183(a)(1) . . . ." *Complaint* ¶ 17.

With respect to Plaintiff's claims under the ADA for failure to design and construct an accessible rental office, the applicable language of the ADA is substantially similar to the language of the Fair Housing Act. In light of the similar language of the two statutes, as they relate to design and construction claims, the Court is of the view that the same reasoning and analysis that the Court applied to Plaintiff's claims under the Fair Housing Act would apply to its claim under the ADA. Therefore, for

reasons discussed above, the Court concludes that Plaintiff's claim for civil penalties under the ADA should be dismissed, and all other claims should remain.[16] Accordingly, the Taigen Defendants' Motion for Summary Judgment should be granted with respect to civil penalties, but should be denied in all other respects.

### C. *Plaintiff's Motion for Summary Judgment (Docket No. 36)*

The Fair Housing Act requires that certain multifamily housing built after March 13, 1991 be designed and constructed with features that are accessible to persons with disabilities. 42 U.S.C. § 3604(f)(3)(C). Similarly, Title III of the ADA requires that places of accommodation designed and constructed for first occupancy after January 26, 1993, or altered after January 26, 1992, be "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1).

Plaintiff asserts that it is undisputed that the ground floor apartments at Centennial Trail do not comply with the requirements for accessibility and, as a result, it should be granted summary judgment as to liability. Similarly, Plaintiff argues that it is undisputed that the rental office at Centennial Trail does not comply with the provisions of the ADA and, thus, Plaintiff should be granted summary judgement with respect to liability.

### 1. Accessibility Standards of the Fair Housing Act

 Rather than specifically demonstrating how Centennial Trail complies with the Fair Housing Act, the Taigen Defendants argue that because the standards of the statute are vague and ambiguous, the standards are unenforceable.

According to the Fair Housing Act, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of handicap ...." 42 U.S.C. § 3604(f). For purposes of the Fair Housing Act, discrimination includes a failure to design and construct multifamily dwellings in such a manner that:

1. The public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

2. All the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

3. All premises within such dwellings contain the following features of adaptive design:

 a. An accessible route into and through the dwelling;

 b. Light switches, electrical outlets, thermostats, and other environ-

---

**16.** The Court recognizes that in *Pickern,* the Ninth Circuit addressed a plaintiff's claim for injunctive relief under the ADA and concluded that "[b]y employing the phrases 'is being subjected to' and 'is about to be subjected to,' the statute makes clear that either a continuing or a threatened violation of the ADA is an injury within the meaning of the [ADA]." 293 F.3d at 1136. From this language in *Pickern,* however, the Court does not conclude that the continuing violation doctrine is applicable with respect to Plaintiff's Title III claim. The Court concludes that *Pickern* is distinguish-

able in that it did not involve alleged construction and design violations. Further, in the instant action, Plaintiff is seeking to invoke the continuing violation doctrine for its claims for compensatory damages and civil penalties, not for injunctive relief as was the case in *Pickern.* Therefore, as discussed above, the Court concludes that the "failure" to properly design and construct an accessible rental office was completed at the time of construction, and thus the continuing violations doctrine does not apply.

mental controls in accessible locations;

c. Reinforcements in bathroom walls to allow later installation of grab bars; and

d. Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C).

Further, § 3604(f)(4) states that "compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people (commonly cited as "ANSI A117.1") suffices to satisfy the requirements" listed as 3a–d above. *See Declaration of William Endelman* Ex. C (*Plaintiff's Statement of Undisputed Facts* Ex. 1) (Docket No. 39). To provide builders and developers with "technical guidance" on how to comply with the specific accessibility requirements of the Fair Housing Act, HUD adopted the "Fair Housing Accessibility Guidelines" ("Guidelines"). 56 Fed. Reg. 9472–9515 (Mar. 6, 1991) (attached to *Endelman Decl.* Ex. B). Although compliance with the Guidelines is "not mandatory," the purpose of the Guidelines is to describe "minimum standards of compliance with the specific accessibility requirements of the Act" *Id.* at 9472, 9476–77. To this extent, a designer or builder may comply with the Fair Housing Act by following other accessibility standards that a "State or unit of general local government has incorporated into its laws." 42 U.S.C. § 3604(f)(5)(A).

Based on the guidance provided by HUD, the Court is of the view that the design ·and construction requirements imposed by the Fair Housing Act are not vague or ambiguous. Although the Court recognizes that a designer or builder is not required to follow ANSI or the Guidelines in order to comply with the Fair Housing Act, the Taigen Defendants have not demonstrated that they followed a comparable set of accessibility guidelines in constructing Centennial Trail.

**2. HUD's Duty to Inform**

 Further, the Taigen Defendants argue there are genuine issues of material fact as to whether HUD fulfilled its duty to adequately inform the Taigen Defendants of the accessibility requirements. For example, Mr. Taigen averred, "[a]t the time of development and construction of Centennial Trail, I was not aware of the requirements of the federal Fair Housing Act for accessibility of multifamily housing." *See Taigen Aff.* ¶ 4. Further, Mr. Taigen averred that "we never received any information from HUD or any other local, state or federal government agency regarding the Fair Housing Act's accessibility standards." *Id.*

In support of its position, the Taigen Defendants cite *Pfaff v. United States Dep't of Housing and Urban Dev.,* 88 F.3d 739 (9th Cir.1996). In *Pfaff,* the plaintiffs sought review of an administrative decision finding violations of the Fair Housing Act for "familial status" discrimination. As a basis for the administrative decision, the ALJ had relied on a HUD decision which required the plaintiffs to satisfy a higher standard of compliance than had previously been required. *Id.* at 747.

Upon review, the Ninth Circuit in *Pfaff* held that the ALJ erred by applying the higher standard from a previous HUD decision. *Id.* Although the court recognized that "[j]ustice dictates ... that our general rule of deference to announcements of law by adjudication have its exceptions," *id.* at 748, the court continued:

As the Supreme Court has cautioned, "there may be situations where the [agency's] reliance on adjudication would amount to an abuse of discretion ...."

*NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Such a situation may present itself where the new standard, adopted by adjudication, departs radically from the agency's previous interpretation of the law, where the public has relied substantially and in good faith on the previous interpretation, where fines or damages are involved, and where the new standard is very broad and general in scope and prospective in application. *Id.* (citations omitted).

The court in *Pfaff* reasoned that the decision relied on by the ALJ "is broad, general, and prospective in application." However, the court stated that "most egregiously, HUD has made inconsistent and misleading representations to those regulated by the [Fair Housing Act] and, in so doing, has led them down a garden path." *Id.* As a result, the court concluded:

> HUD's actions here fall well outside the limits of good—or acceptable—government, and so we grant the petitioners the relief they seek. We also express our hope that HUD will avoid such incidents in the future by providing the public with guidance adequate to enable honest people to comply with the 1988 Fair Housing Amendments Act.

*Id.* at 749–50.

In the Court's view, *Pfaff* is distinguishable from the circumstances presented here. In the instant action, Plaintiff is not seeking that the Court require the Taigen Defendants comply with more stringent requirements than HUD previously required. Rather, as discussed earlier, the Guidelines were pronounced in March 1991, and HUD has not changed these requirements to make them more stringent.

Further, unlike the circumstances in *Pfaff,* the Court is of the view that HUD provided the public with guidance on accessibility standards. For example, in March 1991, the Guidelines were published to provide builders and designers with "technical assistance" in complying with the Fair Housing Act. The Court is of the view that although there is evidence in the record that the Taigen Defendants were not specifically aware of the Fair Housing Act's accessibility requirements, ignorance of the law is not a defense to the Taigen Defendants' potential liability. *See Morgan v. Secretary of Housing and Urban Dev.*, 985 F.2d 1451, 1461 (10th Cir.1993) (concluding that "ignorance of the law will not defeat liability," but it is a fact to consider in determining civil penalties). In fact, the Court notes that in some instances, courts have concluded that a party is charged with constructive knowledge of the law. *See, e.g., Jones v. United States,* 121 F.3d 1327, 1329 (9th Cir.1997) (concluding that publication of regulations in the Federal Register "is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance"); *Bennett v. Office of Workers' Comp. Programs,* 717 F.2d 1167, 1169 (7th Cir.1983) ("[P]ublication of regulations in the Federal Register has the legal effect of constructive notice of their contents to all who are affected thereby."); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

In light of the foregoing, the Court concludes that although the record demonstrates an issue of fact with respect to the efforts that HUD made to make the Taigen Defendants aware of the accessibility standards required under the Fair Housing Act, such facts are not "material" to the case. *See T.W. Elec. Serv., Inc.,* 809 F.2d at 630 ("A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit."). Therefore, the Court concludes that it would be inappro-

priate to deny summary judgment on this ground.

### 3. Liability for Fair Housing Act Violations

As discussed above, 42 U.S.C. § 3604(f)(3)(C) lists the requirements for accessibility under the Fair Housing Act. However, as discussed at length above, the Fair Housing Act requires that claims brought pursuant to § 3614(a) must either be based on a "pattern or practice" of discrimination, or when "any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance."

As the Court concluded above, there are genuine issues of material fact as to whether the Taigen Defendants are liable for a "pattern or practice" of discrimination, and thus, summary judgment in favor of the Taigen Defendants would be improper in this respect. In the Court's view, it would be inconsistent to conclude there is a genuine issue of material fact with respect to the Taigen Defendants' motion, but not Plaintiff's Motion for Partial Summary Judgment. Accordingly, Plaintiff's Motion for Partial Summary Judgment should be denied in this respect.

However, the Court also concluded above that the instant action satisfies the second prong of § 3614(a), i.e., a determination that the alleged denied of disabled individuals of accessible housing raises an issue of general public importance. Therefore, the Court concludes that the prerequisite in establishing the Taigen Defendants' liability has been met, and the Court will next analyze whether there are genuine issues of material fact as to whether Centennial Trail complies with the requirements of the Fair Housing Act.

In support of its position, Plaintiff submits the Declaration of William Endelman and a document prepared by him entitled "FHA Facility Accessibility Survey" of Centennial Trail Apartments. *Endelman Decl.* Ex. A. Mr. Endelman avers that for more than 12 years he has been consulting in accessibility compliance, including compliance with the Fair Housing Act, the ADA, and ANSI. *Id.* ¶ 2. Throughout his declaration and attached report, Mr. Endelman details his findings from an accessibility survey conducted on April 9, 2002 at Centennial Trail. Mr. Endelman specifically details how Centennial Trail fails to comply with the accessibility requirements set forth in 42 U.S.C. § 3604(f)(3)(C).

In opposition, the Taigen Defendants "do not contend that Centennial Trail in fact is completely compliant with the accessibility provisions of the Fair Housing Act." *Mem. in Opposition to Summary Judgment,* p. 8 (Docket No. 46). In fact, according to the record, the Taigen Defendants admitted that the doors at Centennial Trail are not designed to allow passage into, and within all premises of its ground floor units to allow passage by persons using wheelchairs. *Plaintiff's Statement of Undisputed Facts* Ex. 2, p. 14 (Response to Request for Admission No. 85). Similarly, the Taigen Defendants admitted that the bathroom walls in the ground floor units at Centennial Trail do not have reinforcements to allow later installation of grab bars. *Id.* at p. 15 (Response to Request for Admission No. 88). The Court notes that during oral argument on July 15, 2003, the Taigen Defendants conceded to these violations of the Fair Housing Act.

Notwithstanding the foregoing, the Taigen Defendants argue that some of the features of the ground floor apartments at Centennial Trail comply with the Fair Housing Act's accessibility requirements. Specifically, the Taigen Defendants argue that the following are accessible: electrical outlets, toilets in some of the bathrooms,

and bathroom lavatories. *Mem. in Opposition to Summary Judgment*, pp. 8–9; *Taigen Defendants' Statement of Disputed Facts*, pp. 2–3 (Docket No. 47).[17]

The district court in *PNE* concluded that "the fact that a covered complex does not comply with the HUD 'guidelines' does not establish a violation of the FHA," Order dated 3/17/03, p. 24,[18] and denied the Government's motion for summary judgment with respect to liability based on two affidavits submitted on behalf of the defendants regarding accessibility of some of the features of the complexes at issue. Nevertheless, based on the evidence in the *PNE* record, the court granted the Government's motion in part. *Id.* at pp. 24–27.

Unlike the circumstances existing in *PNE*, however, the Taigen Defendants have failed to submit any evidence to demonstrate the accessibility of Centennial Trail is in accordance with the Fair Housing Act. Although the Court recognizes that the failure to comply with the HUD Guidelines does not establish a violation of the FHA, the record demonstrates that Centennial Trail fails to comply with the accessibility standards of ANSI. *See Endelman Decl.* ¶¶ 9, 15, 17, 18, 19, 21. Further, the Taigen Defendants have failed to submit evidence in the record that Centennial Trail complies with any other accessibility standard. *See* 56 Fed.Reg. 9472 (stating that builders and developers may choose to depart from the HUD Guidelines and seek alternate ways to demonstrate compliance with the requirements of the Fair Housing Act).

Therefore, the Court concludes there is no genuine issue of material fact with respect to the Taigen Defendants' liability under the Fair Housing Act. *See* Fed. R.Civ.P. 56(e) (stating that to avoid summary judgment, an opposing party must set forth specific facts, "by affidavit or otherwise provided by this rule," that there is a genuine issue for trial). Accordingly, Plaintiffs' Motion for Summary Judgment with respect to the Taigen Defendants' liability for violations of the Fair Housing Act should be granted.

### 4. Liability under the ADA

As discussed above, Plaintiff has also moved for summary judgment as to the Taigen Defendants' liability for violations of the ADA. As with the alleged violations of the Fair Housing Act, Plaintiff submits the declaration and report of Mr. Endelman. However, the Taigen Defendants have not submitted any evidence that the rental office complies with the ADA. In fact, the record demonstrates that the Taigen Defendants have acknowledged that Centennial Trail was not designed and constructed in accordance with the ADA, nor does it comply with the ADA since the time of construction. *Plaintiff's Statement of Undisputed Facts* Ex. 2, p. 15 (Response to Request for Admission Nos. 92 and 93). Therefore, the Court concludes that summary judgment is appropriate in this regard. *See* Fed.R.Civ.P. 56(c). Accordingly, Plaintiff's Motion for Summary Judgment should be granted in this respect.

17. The Taigen Defendants' Statement of Disputed Facts states that the bathroom lavatories at "Creekside Meadows" are accessible. However, the Court assumes this is an error and that the Taigen Defendants intended to refer to Centennial Trail.

18. *See also Village of Olde St. Andrews*, 250 F.Supp.2d at 719–20 (rejecting the Government's argument that it was entitled to summary judgment on liability for the defendants' failure to comply with the design and construction requirements of the Fair Housing Act).

### 5. Plaintiff's Claims for Relief

Finally, the Taigen Defendants argue that Plaintiff is not entitled to any of the relief it has requested for the reasons argued in their motion for summary judgment. As the Court concluded previously, the Taigen Defendants should be granted summary judgment with respect to Plaintiff's claims for civil penalties. However, the Court also concluded that the Taigen Defendants' motion should be denied in all other respects.

### III.

### RECOMMENDATION

Based on the foregoing, this Court recommends the District Court issue an order as follows:

1. The Taigen Defendants' Motion for Summary Judgment (Docket No. 30) should be GRANTED IN PART and DENIED IN PART as follows:

 a. Plaintiff's claims for civil penalties should be dismissed and the Taigen Defendants' Motion for Summary Judgment should be granted in this respect.

 b. In all other respects, the Taigen Defendants' Motion for Summary Judgment should be denied.

2. Plaintiff's Motion for Partial Summary Judgment (Docket No. 36) should be GRANTED.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1 or as a result that party may waive the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals.

August 22, 2003.